CObMONWEALTH *vs.* GEORGE PLAISTED.

Suffolk.    February 3, 1888. — January 5, 1889.

Present : MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Constitutional Law — Board of Police of Boston — Itinerant Musicians — Rules and Regulations — Notice — Salvation Army.*

The board of police of Boston has the power, by delegation from the city council under authority from the Legislature, to adopt rules for the regulation of itinerant musicians in the streets and public places of the city; and such rules when made are binding upon all persons without notice, and are not unreasonable or invalid in requiring the taking out of a license, for which a small fee must be paid, by such a musician.

A member of a religious organization, while playing on a cornet without a license in a street parade and creating no actual disturbance, is an itinerant musician within the meaning of such rules, and is not protected by the fact that his act was done as a matter of religious worship only.

The St. of 1885, c. 323, creating a board of police for the city of Boston, to be appointed by the Governor and Council from the two principal political parties, is constitutional.

COMPLAINT to the Municipal Court of the city of Boston, dated October 6, 1887, alleging that the defendant, on October 5, 1887, " at Boston aforesaid, and within the judicial district of said court, in a public street of said city within said district, and called Washington Street, did then and there perform on a cer- . tain musical instrument, to wit, a cornet; he, the said Plaisted, not being licensed by the board of police for said city so then and there to do, against the peace of said Commonwealth and the form of the statute of said Commonwealth, and the rules and regulations of the board of police for said city, in such case made and provided."

Trial in the Superior Court, on appeal, before *Hammond, J.,* who, after a verdict of guilty, reported the case for the determination of this court as follows.

The defendant, on the day alleged, at about half-past seven o'clock in the evening, was on Washington Street, a public street in Boston, between Warrenton Street and Common Street, and was a part of a procession or parade of the Salvation Army, so called, and was engaged in playing upon a cornet. This procession was without police escort. There was no disturbance or breach of the peace, and the persons viewing the procession were such as ordinarily gather on the sidewalk when a street procession is going through the streets.

The board of police of said city of Boston was established under the St. of 1885, c. 323. The clerk of the board produced its records, which showed that, on September 27, 1887, certain rules and regulations were adopted by the board "for the government of itinerant musicians." * There was no evidence that these rules had been published in any way, or that the defendant had received any notice that the same had been adopted by the board of police. The defendant was complained of and arrested for the alleged violation of these rules, by playing on the cornet as aforesaid.

The defendant offered evidence to show that this organization, called the Salvation Army, is a regular religious and charitable organization, with a set form of worship, and that

---

* These rules are as follows :

" 1. No person shall sing or play or perform on any musical instrument in the streets or public places of the city of Boston, except in connection with a funeral, a military parade, or a procession of a political, civic, or charitable organization for which a'police escort is provided, unless licensed thereto by the board of police for the city of Boston, as hereinafter set forth.

" 2. Two or more persons joining together to sing or perform on musical instruments in the streets or public places of said city will be considered a band, a collective license for which will be granted to one or more persons, and the membership of the band may be changed from time to time without additional license fee, provided the number of members be not increased.

" 3. The board will grant licenses to persons or bands to sing or play or. perform on musical instruments in the streets and public places of the city, and to solicit and receive compensation therefor from bystanders or the public ; but no such licensed person or band shall perform as part of any procession, parade, or assemblage in the streets or public places of the city, except as provided in Rule 1.

" 4. No musician or band shall perform in the streets or public places of the city before nine o'clock A. M., nor after ten o'clock P. M., nor on Sunday,

the street parade is a part of that worship, and that the parade in which the defendant played the cornet, as above stated, was one of these parades, and that the defendant took part in the parade as a matter of religious worship only. It was admitted by the government that the defendant could prove these facts if competent; but, upon objection of the district attorney, the judge ruled that the evidence was not admissible, and excluded the same.

The defendant asked the judge to instruct the jury as follows :

" 1. By the Statute of 1885, chapter 323, under which the board of police was constituted, said board has no right to make the rules under which these complaints were issued.

" 2. The authority of said board, by said statute, is limited to the appointment, establishment, organization, and regulation of the police of said city, and does not extend to and include the powers given to the board of police commissioners by the Statute of 1878, c. 244, § 2, in regard to ' licensing, regulating and restraining theatrical exhibitions, . . . itinerant musicians,' etc.

" 3. The Revised Ordinances of Boston of 1883, and the Revised Ordinances of Boston of 1885, or either of them, can give the board of police no further authority than what is given as aforesaid by the statute of 1885.

" 4. If the power to regulate itinerant musicians is not vested by the statute of 1885 in the board of police, but is in the mayor and aldermen of the city of Boston, the latter cannot delegate their power and authority to the former.

---

except as a part of a funeral or military procession, or at a concert given by the city (and then not within three hundred feet of any place of worship while worship is being held therein); nor within three hundred feet of any building any occupant of which notifies him or them to desist, or has notified the board of police in writing that he objects to such performance.

" 5. Every license herein provided for shall expire on the first day of September next succeeding its date ; the fee for such license shall be fifty cents for each and every person included therein. The license shall not be transferable, and shall be revocable by the board at its discretion, and may be suspended by any captain of police for the district under his charge, pending any charges to said board against the licensee ; and in case of revocation no portion of the license fee shall be refunded.

" 6. Any person violating any of the foregoing rules shall be liable to a fine not exceeding twenty dollars for each offence."

" 5. The provisions of Public Statutes, c. 53, § 16, do not apply to the city of Boston.

" 6. The powers of the city of Boston are limited to the provisions mentioned in the city charter. See St. of 1854, c. 448, § 35.

" 7. Should the court rule that these ordinances apply to the board of police, and also Public Statutes, c. 53, § 16, yet these ordinances and the rules of the board in question are inconsistent with said charter and said chapter 53.

" 8. Said section 16 of chapter 53, only gives power to 'regulate and control,' not to 'license'; hence these rules are void.

" 9. It is not within the power of the Legislature to subject the people of cities and these defendants to the arbitrary will of a body like the board of aldermen or the board of police ; and if the court should rule that the statutes and ordinances, before cited, give the board of police the power they claim by these rules, then the defendant asks the court to rule that these ordinances and rules are unconstitutional and void.

" 10. These rules are for 'itinerant musicians.' Under the evidence in the case, defendant is not an 'itinerant musician.'

"11. If the board, under the charter and Public Statutes, have power to pass rules, yet the rules in question are void : A. Because they are inconsistent with law. B. Because they are unreasonable. C. Because they are unconstitutional, as interfering with Article III. and Amendment Article XI. of Bill of Rights. D. Because the rules amount to absolute prohibition. E. Because they are partial, and not general.

" 12. The law only confers on cities such power over its subjects as will enable the city to keep order and suppress mischief in accordance with the limitations and rights of the people.

" 13. These rules amount to a suppression of a thing not absolutely dangerous, and as a way of getting rid of the trouble of regulating them, and hence are not legal.

" 14. These rules interfere with the liberty and religious rights of the defendant, and are unconstitutional and void.

" 15. If the board have any power to make rules, the extent to which they can go under the law is to make regulations as to the time, mode, and circumstances under which persons shall assert, exercise, or enjoy their rights without interfering with private rights.

" 16. Only when religious bodies create public disturbance, or operate as nuisances, or create or manifestly threaten some tangible public or private mischief, will the law interfere with their religious demonstrations.

" 17. It cannot be assumed that the processions of the Salvation Army are nuisances.

" 18. If, upon the evidence, the acts of the defendant created no public disturbance, then the board had no right to interfere.

" 19. Unless the acts of the defendant are expressly forbidden by the statutes, an actual disturbance or breach of the peace is necessary to complete the offence.

" 20. Unless the acts of the defendant are expressly made criminal by the law, there must be shown to be an actual disturbance or breach of the peace to convict the defendant.

" 21. These rules, if legal, are for the regulation and control of persons, and this must mean reasonable regulation and control, and such as would prevent disorder and breach of the peace ; and unless the jury find facts that manifestly tend to disorder and breach of the peace, this complaint cannot stand.

" 22. These rules, if legal, can have no effect unless the jury find the acts of the defendant were accompanied by a breach of the peace.

" 23. These complaints can only stand on proof that the actions of the defendant were against the peace of the Commonwealth, the form of the statutes, and. the rules and regulations of the board of police of said city (if they have power to make such rules) in such cases made and provided ; and, unless the jury find that the doings of the defendant fall within all these allegations of said complaint, the jury should return a verdict for the defendant.

" 24. That the evidence in issue does not support the complaint.

" 25. That said Statute of 1885, appointing the board of police, is unconstitutional, and hence all the acts of the board in the premises are void.

" 26. Unless the government show that the defendant had some notice of these rules, or the same were published so that defendant may be presumed to have notice of these rules, the defendant should be acquitted."

The judge refused so to instruct, and, against the defendant's objection, instructed the jury, that, if they were satisfied beyond a reasonable doubt that the defendant played on a cornet on Washington Street as stated, then they would be warranted in finding the defendant guilty under this complaint.

If there was error in the exclusion of evidence, or in the rulings or refusal to rule, the verdict was to be set aside; otherwise, the verdict was to stand.

*G. A. A. Pevey*, for the defendant.

*H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

MORTON, C. J.   The defendant contends that the rules of the board of police, which he is charged with having violated, are not within the terms of the authority conferred upon that board. But we think this ground of objection cannot be maintained. The St. of 1885, c. 323, § 2, conferred upon and vested in the board of police all the power theretofore vested in the board of police commissioners, except as otherwise therein provided. The St. of 1878, c. 244, established the board of police commissioners, and in § 2, after mentioning other powers, proceeded to enact that " said board may also be empowered by the city council to exercise all or any of the powers conferred by the statutes of the Commonwealth upon the board of aldermen, the city council or the city of Boston, in relation to licensing, regulating and restraining theatrical exhibitions, . . . itinerant musicians," etc.   By the Pub. Sts. c. 53, § 16, " The mayor and aldermen of a city may adopt rules and orders not inconsistent with law for the regulation and control of persons who frequent the streets and public places therein playing on hand-organs or other musical instruments, beating drums, blowing trumpets, . . . with penalties for the violation thereof, not exceeding twenty dollars for each offence."   This enactment was derived from the St. of 1875, c. 136, § 2, which in its turn was founded on the St. of 1869, c. 301, § 2.   The words "mayor and aldermen " in the statute above quoted, when applied to Boston, mean " board of aldermen."   Gen. Sts. c. 19, § 17.

It has been suggested that the Pub. Sts. c. 53, § 16, were not designed to be applicable to the city of Boston; but we see no reason for excluding Boston from this salutary provision, and we have no doubt that, under the various statutes cited, the

board of police may be empowered to regulate and restrain itinerant musicians to the same extent that the board of police commissioners might have been.   By the Revised Ordinances of 1885 of the city of Boston, c. 26, § 1, it was provided that " the board of police shall have and exercise all the powers conferred by the statutes of the Commonwealth and the ordinances of the city upon the board of aldermen or upon the mayor and aldermen, in relation to licensing, regulating, and restraining . . . itinerant musicians."   It thus appears that the board of police, according to the terms of the statutes and ordinances, have the authority to adopt rules for regulating and restraining itinerant musicians in the streets and public places of Boston.

It is objected that the defendant was not an itinerant musician within the meaning of the rule of the board of police.   But the general phrase " itinerant musician " includes the defendant, and the exceptions contained in the rule are sufficient to show that no other exception can fairly be implied, which would take him out of its operation.

It is also objected that the defendant's act of playing the cornet in the parade in the street was done as a matter of religious worship only.   But this defence cannot avail to protect him from the consequences of an act which is made subject to a penalty under the law.   *Reynolds* v. *United States*, 98 U. S. 145, 161. *State* v. *White*, 64 N. H. 48.   The provisions of the Constitution which are relied on, securing freedom of religious worship, were not designed to prevent the adoption of reasonable rules and regulations for the use of streets and public places ; and a religious body, however earnest and sincere, cannot avail itself of these provisions as an authority to take possession of a street in a city, in violation of such rules, for the purpose of public worship therein.   The fact that there is no actual disturbance or breach of the peace, on the particular occasion, is immaterial. *State* v. *White*, 64 N. H. 48.

It is further urged by the defendant, that the rules are unreasonable and invalid ; that, under the guise of regulating, they virtually prohibit ; and that the power of requiring the taking out of a license and paying a license fee is not included in the power of regulation.   It is however to be borne in mind, that these rules do not restrict any one in the ordinary use of his own

property, but merely affect the use which may be made of the streets and public places of the city. Nor is the reasonableness of the rules to be tested by their possible application to extreme cases, as, for instance, singing or playing (in a low tone, not intended to be heard by others) for a short time in a street or place not occupied by dwellings. No police rules or regulations are to be tested in this manner, and, if such a case were to present itself, perhaps the rule might by construction not be deemed to include it. However that may be, we are to look at the rule more generally.

The validity of rules and regulations quite as broad and sweeping as this, in reference to the use of streets in cities, has often been upheld. *Commonwealth* v. *Worcester*, 3 Pick. 462. *Vandine, petitioner*, 6 Pick. 187. *Pedrick* v. *Bailey*, 12 Gray, 161. *Commonwealth* v. *Bean*, 14 Gray, 52. *Commonwealth* v. *Curtis*, 9 Allen, 266. *Commonwealth* v. *McCafferty*, 145 Mass. 384. Under a power to regulate, the requirement to take out a license is free from legal objection. *Commonwealth* v. *Stodder*, 2 Cush. 562, 573. *Vandine, petitioner*, 6 Pick. 187. *Nightingale, petitioner*, 11 Pick. 168. *Pedrick* v. *Bailey*, 12 Gray, 161. *Commonwealth* v. *Brooks*, 109 Mass. 355. And where a license is lawfully required, a small fee may be imposed, not designed for revenue, but to cover reasonable expenses incident to the enforcement of the rules. *Commonwealth* v. *Stodder*, 2 Cush. 562. *Welch* v. *Hotchkiss*, 39 Conn. 140. Cooley Const. Lim. (3d ed.) 201, n. ; 1 Dillon Mun. Corp. (3d ed.) § 357.

The rules are binding upon all persons without notice. *Heland* v. *Lowell*, 3 Allen, 407. *Vandine, petitioner*, 6 Pick. 187, 189. 1 Dillon Mun. Corp. (3d ed.) §§ 355, 356.

The defendant contends that the power to make the rules in question could not be delegated to the board of police. The decisions cited in support of this argument (*Day* v. *Green*, 4 Cush. 433, *Lowell* v. *Simpson*, 10 Allen, 88, 89) are merely to the effect that, where a city ordinance gives power to the mayor and aldermen to grant a license to move a building through the streets, the aldermen cannot delegate this power to the mayor alone. No authority has been cited, and after some examination we have found none, which holds that the Legislature cannot authorize a particular board of officers, who have charge of the

whole or a portion of the affairs of a city, to make reasonable police rules and regulations which shall be binding upon the people, with penalties imposed for a violation of them.

It could not at this day be contended that such power cannot be intrusted by the Legislature to cities and towns, or to the mayor and aldermen of a city and the selectmen of a town, as representing the municipality. *Heland* v. *Lowell*, 3 Allen, 407. 1 Dillon Mun. Corp. (3d ed.) § 308. And in this Commonwealth it has long been the custom to vest similar powers in boards of health of cities and towns, and such delegation of authority has always been recognized as valid. St. 1816, c. 44, § 3; Rev. Sts. c. 21, §§ 1, 5, 6; Gen. Sts. c. 26, §§ 1, 5; Pub. Sts. c. 80, §§ 1, 4, 8, 18. *Taunton* v. *Taylor*, 116 Mass. 254, 260. *Sawyer* v. *State Board of Health*, 125 Mass. 182, 196. *Commonwealth* v. *Young*, 135 Mass. 526. Similar power was also, in 1860, given to the cattle commissioners. St. 1860, c. 221, §§ 2, 6, 10; Pub. Sts. c. 90, §§ 13, 16, 19. In the present case, as has already been seen, the Legislature authorizes the city council to empower the board of police to make rules and regulations, and a majority of the court is of opinion that there is no constitutional objection to this delegation of authority. Cooley Const. Lim. (3d ed.) 118, 204. *Brooklyn* v. *Breslin*, 57 N. Y. 591. *Birdsall* v. *Clark*, 73 N. Y. 73. *State* v. *Paterson*, 5 Vroom, 163.

The case *In re Frazee*, 63 Mich. 396, is no authority against this view. In that case the city council, without having any legislative authority, assumed to pass a by-law prohibiting, under a severe penalty, acts similar to those done by the defendant, and the court held it to be beyond the power of the city council to do so.

It is also suggested, though not much insisted on, that the St. of 1885, c. 323,* is unconstitutional, because it takes from the

---

\* This statute is as follows:

"Section 1. The Governor of the Commonwealth, with the advice and consent of the Council, shall appoint from the two principal political parties three citizens of Boston who shall have been residents therein two years immediately preceding the date of their appointment, who shall constitute a board of police for said city, and who shall be sworn before entering upon the duties of their office. One member of said board shall be designated by the Governor as chairman, and two shall constitute a quorum. Their terms of office shall be so arranged and designated at the time of appointment that

city the power of self-government in matters of internal police. We find no provision of the Constitution with which it conflicts, and we cannot declare an act of the Legislature invalid because it abridges the exercise of the privilege of local self-government in a particular in regard to which such privilege is not guaranteed by any provision of the Constitution. While the Constitution recognizes our system of town governments as an inherent part of our general system of government, so that the Legislature could not abolish the town system without coming in conflict with some parts of its provisions, yet in most respects it

the term of one member shall expire on the first Monday of May, eighteen hundred and eighty-eight, one on the first Monday of May, eighteen hundred and eighty-nine, and one on the first Monday of May, eighteen hundred and ninety. The full term of office, after these dates, shall be five years, and all vacancies occurring after the passage of this act shall be filled by the Governor with the advice and consent of the Council. The members of said board may be removed by the Governor with the advice and consent of the Council for such cause as he shall deem sufficient and shall express in the order of removal. The board of police shall appoint a clerk, who shall be sworn, who shall keep a record of all proceedings, issue all notices, and attest all such papers and orders as said board shall direct, whose term of office shall be five years, but who may be removed by said board for such cause as it shall deem sufficient and shall express in its order of removal.

"Section 2. The board of police shall have authority to appoint and establish and organize the police of said city of Boston, and make all needful rules and regulations for its efficiency. All the powers now vested in the board of police commissioners in said city of Boston, by the statutes of the Commonwealth, or by the ordinances, by-laws, rules, and regulations of said city, except as otherwise hereby provided, are hereby conferred upon and vested in said board of police.

"Section 3. The members of the Boston police force in office when the said board of police are first appointed shall continue to hold their several offices until removed or placed on the retired list by the said board; and the present rules and regulations of the board of aldermen for the government of the police shall continue in force until otherwise ordered by said board of police. All police officers appointed by said board of police hereby created shall have and exercise within the limits of said city all the common law and statutory powers of constables, except the service of civil process, and shall have all the powers given to the police as watchmen by the statutes of the Commonwealth, the laws relating to said city, or by any ordinances thereof.

"Section 4. The annual salary of the chairman of said board of police shall be four thousand five hundred dollars, that of the other members four thousand dollars, of the clerk two thousand five hundred dollars, which shall

leaves the power and duty of providing laws for the government of the towns and cities in the discretion of the Legislature.

It gives to the General Court the very broad and sweeping powers "to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this Constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same, and for the necessary support

---

be paid monthly from the treasury of the city of Boston. Said officers shall not engage in any other business. The board of police with the approval of the Governor and Council shall be provided with such rooms as shall be convenient and suitable for the performance of its duties, the rent of which shall be paid by the city of Boston. The said city of Boston shall provide all such suitable accommodations for the police of said city as said board shall require, and all buildings and property used by said police shall be under the control of said board. All expense for the maintenance of buildings, the pay of the police, and all incidental expenses incurred in the administration of the said police, shall be paid by the city of Boston upon the requisition of said board.

"Section 5. Said board of police shall not appoint any larger number of patrolmen than the present police commissioners of said city are now authorized to appoint, except as authorized by said city, nor shall the pay of the police be increased or diminished except by the concurrent action of said city and said board of police.

"Section 6. In case of tumult, riot, or violent disturbance of public order, the mayor of said city shall have, as the exigency in his judgment may require, the right to assume control for the time being of the police of said city; but before assuming such control he shall issue his proclamation to that effect, and it shall be the duty of the board of police to execute all orders promulgated by him for the suppression of such tumult and the restoration of such order.

"Section 7. The board of police shall make a detailed report of its doings quarterly to the mayor of said city, and annually to the Governor of the Commonwealth in the month of December. The records of said board of police shall at all times be open to the inspection of the Governor of the Commonwealth, the mayor of said city, or to such persons as may be designated by them.

"Section 8. Nothing herein shall affect the enforcement of the provisions of chapter three hundred and twenty of the acts of the year eighteen hundred and eighty-four, being an act to improve the civil service of the Commonwealth and the cities thereof, or of the rules made by the commissioners appointed thereunder."

and defence of the government thereof; and to name and settle annually, or provide by fixed laws, for the naming and settling all civil officers within the said Commonwealth; the election and constitution of whom are not hereafter in this form of government otherwise provided for ; and to set forth the several duties, powers and limits, of the several civil and military officers of this Commonwealth." Const. chap. 1, § 1, art. 4. The second article of Amendment of the Constitution provides that "the General Court shall have full power and authority to erect and constitute municipal or city governments, in any corporate town or towns in this Commonwealth, and to grant to the inhabitants thereof such powers, privileges and immunities, not repugnant to the Constitution, as the General Court shall deem necessary or expedient for the regulation and government thereof." Const. Amend. art. 2. Under these provisions, as is said by Chief Justice Chapman, "There can be no doubt that the power to create, change and destroy municipal corporations is in the Legislature. This power has been so long and so frequently exercised upon counties, towns and school districts, in dividing them, altering their boundary lines, increasing and diminishing their powers, and in abolishing some of them, that no authorities need be cited on this point. The Constitution does not establish these corporations, but vests in the Legislature a general jurisdiction over the subject by its grant of power to make wholesome laws, as it shall judge to be for the general good and welfare of the Commonwealth." It " may amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, and abolish them altogether, at its own discretion." *Weymouth & Braintree Fire District* v. *County Commissioners,* 108 Mass. 142.

The several towns and cities are agencies of government largely under the control of the Legislature. The powers and duties of all the towns and cities, except so far as they are specifically provided for in the Constitution, are created and defined by the Legislature, and we have no doubt that it has the right in its discretion to change the powers and duties created by itself, and to vest such powers and duties in officers appointed by the Governor, if in its judgment the public good requires this, instead of leaving such officers to be elected by the people or

appointed by the municipal authorities. We are therefore of opinion, that the Legislature has the right to provide that the police of Boston shall be put under the control and management of·a board of police appointed by the Governor; and we see nothing in the details of the statute of 1885 which is open to any constitutional objection.

The Legislature has the right to fix the qualifications of the members of the board, and we see no objection to the provision that they shall be appointed from two principal political parties. It is designed to secure, in the action of the board, impartiality and freedom from political bias. It can probably be regarded only as directory to the Governor, and not as an element in the tenure of the office; in either view, it violates no provision of the Constitution, and it is for the Legislature to determine whether such a qualification is wise.

*Judgment on the verdict.*