MAYOR OF CAMBRIDGE *vs.* CITY OF CAMBRIDGE.

Middlesex.   September 18, 1917. — October 16, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Municipal Corporations.  Cambridge.  Interest.*

Under the provision contained in St. 1915, c. 267, Part III, § 7, that in all cities adopting the Plan B form of government, the new city council shall determine the salary to be received by the new mayor, not exceeding $5,000, and that "His salary shall not be increased or diminished during the term for which he

is elected," and under the provision of St. 1915, c. 267, Part I, § 4, that "All ordinances . . . of a city . . . , existing at the time when such city adopts a plan of government set forth in this act, shall continue in full force and effect until annulled, repealed, modified or superseded," an ordinance of the city of Cambridge, which was in force when that city adopted the Plan B form of government, fixing the salary of the mayor under the former charter at $3,500 a year, is in conflict with the power given to the city council by the new charter and does not impair the validity of an ordinance, passed by such city council four months after the adoption of the new charter, fixing the salary of the mayor under that charter at $5,000 a year.

The city of Cambridge adopted the Plan B form of government in November, 1915. The ordinance of the city council of Cambridge under the new charter, referred to above, was passed on March 21, 1916, and provided that the mayor's salary of $5,000 a year should begin on the first Monday in January, 1916. On March 25 the mayor made demands on the auditor for his salary for the months of January and February at the rate of $5,000 a year, and thereafter on the first day of each month presented to the auditor a claim for his monthly salary at the rate of $5,000 a year. All these demands were refused by the auditor. An ordinance of the city provided that pay-day for services performed for the city should be the tenth day of the month succeeding the month in which the services were rendered. *Held,* that the mayor was entitled to interest on three months' salary from April 10, 1916, and to interest on the salary for each of the other months from the tenth day of the month next succeeding the month for which the salary became due.

CONTRACT by Wendell D. Rockwood, who on December 21, 1915, was elected mayor of Cambridge for a term of two years from the first Monday of January, 1916, for $5,000, alleged to be the amount of his salary from January 3, 1916, to January 1, 1917.

In the Superior Court the case was submitted to *Fox,* J., upon an agreed statement of facts, of which the substance is stated in the opinion. The judge found the facts to be as stated in the agreed statement of facts and reported the case for determination by this court, such judgment to be entered as should be in accord with such determination.

St. 1915, c. 267, Part III, § 7, so far as material, is as follows: "The mayor shall receive for his services such salary as the city council by ordinance shall determine, not exceeding five thousand dollars a year, and he shall receive no other compensation from the city. His salary shall not be increased or diminished during the term for which he is elected."

St. 1915, c. 267, Part 1, § 4, is as follows: "All ordinances, resolutions, orders or other regulations of a city or of any authorized body or official thereof, existing at the time when such city adopts a plan of government set forth in this act, shall continue

in full force and effect until annuled, repealed, modified or superseded."

4. *T. Smith*, for the defendant.

*F. T. Hammond*, for the plaintiff.

LORING, J.  In November, 1915, the defendant city adopted the second of the four charters which the several cities of the Commonwealth (outside of Boston) by force of St. 1915, c. 267, were given permission to adopt, called in the statute Plan B. In December, 1915, the plaintiff was elected and on the first Monday of January, 1916, he qualified as mayor under the new charter.  Acting under § 7 of the new charter (St. 1915, c. 267, Part III) the new city council on March 21, 1916, adopted an ordinance determining that the salary of the mayor should be $5,000 a year and that it should begin on the first Monday of January, 1916.  On the defendant refusing to pay the salary so established this action was brought by the plaintiff to recover the salary then due him for his first year of service.

The defence set up is that the ordinance of March 21, 1916, is void.  This contention is based on the fact that an ordinance was adopted by the old city council in 1892 establishing the salary of the incumbent of the former office of mayor at $3,500 and upon the further fact that it is provided by St. 1915, c. 267, Part I, § 4, that: "All ordinances . . . existing at the time when such city adopts a plan of government set forth in this act, shall continue in full force and effect until annulled, repealed, modified or superseded."  The contention of the defendant is that by force of St. 1915, c. 267, Part I, § 4, the new mayor's salary was established at $3,500 when the plaintiff came into office and that the clause of Part III, § 7, which provides that the mayor's "salary shall not be increased or diminished during the term for which he is elected" prevented the new city council from increasing the amount of the salary so established.

The contention cannot be upheld.  When in November, 1915, the defendant city adopted the second of the four plans of government set forth in St. 1915, c. 267, Part III, a new system of government came into effect, *Cunningham* v. *Mayor of Cambridge*, 222 Mass. 574, 577, and the office of mayor under the new system of government (which came into effect then); though called by the same name, was a new office.  *Donaghy* v. *Macy*, 167 Mass. 178.

In that new office the old city council had a passing interest at the most. It was the intention of the Legislature in enacting Part III, § 7, to provide that the salary for services to be performed by the incumbent of the new office should be determined by the new city council and that the salary so established should not be increased nor diminished during the term for which the incumbent had been elected. It is plain that in enacting Part I, § 4, it was not the intention of the Legislature to modify in any way the authority given to the new city council by Part III, § 7. The purpose of Part I, § 4, was to bridge over the interim between the repeal of an old charter (by the adoption of one of the four charters set forth in St. 1915, c. 267), and such time as action was taken under the new charter with respect to those matters of city government which are ordinarily provided for by ordinances, resolutions and orders. When St. 1915, c. 267, was enacted the salary to be received by the mayor was established in case of some cities by a provision in the charters of those cities, while it was provided in the charters of the other cities that the mayor's salary should be established by an ordinance adopted pursuant to the charter. It could not have been the intention of the Legislature in enacting Part I, § 4, to modify § 7 of Part III so that it should mean one thing in case of some of the cities and another thing in case of the other cities. Section 7 means that in case of all cities adopting Plan B the new city council shall determine the salary to be received by the new mayor for services rendered by him including the services rendered by him during his first two years of office. The effect of Part I, § 4, rightly construed, is to continue in force "All ordinances, resolutions, orders or other regulations . . . existing at the time when such city adopts a plan of government set forth in this act," so far as those ordinances, resolutions, etc. are not in conflict with specific provisions of the new charter, whether it is Plan A, B, C or D. The old ordinance of 1892 fixing the salary of the incumbent of the former office of mayor of the defendant city at $3,500 is in conflict with the power given to the city council elected under the new charter to establish the salary (not exceeding $5,000) to be received by the incumbent of the new office of mayor for services to be rendered in that office. It follows that the ordinance relied on by the defendant did not control the right given

to the city council elected under the new charter to establish the salary to be paid to the plaintiff for the year here in question.

The plaintiff claims interest on the amount due him, and no contention to the contrary has been made by the defendant. It appears that on March 25 the plaintiff made demands on the auditor for his salary (at the rate of $5,000 a year) for the months of January and February and the auditor declined to approve a bill and sign a draft for the payment of the sum demanded. It further appears that thereafter the mayor duly presented to the auditor a claim for his monthly salary at the rate of $5,000 a year on the first of each month and that the auditor declined in each instance to approve a bill and sign a draft for the sum then due. It is provided by one of the ordinances of the city continued in force by Part I, § 4, that pay-day for services performed for the defendant city shall be on the tenth day of the month succeeding the month in which the services were rendered. The plaintiff asks to be allowed interest on three months' salary from April 10, 1916, and interest on the other nine months' salary from the tenth day of each month next succeeding the month for which the salary became due. We are of opinion that he is entitled to the interest asked for.

*Judgment accordingly.*