## ANNA R. YOUNG & others vs. CITY COUNCIL OF WALTHAM & another.

Middlesex.    December 5, 1922. — December 8, 1922.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*School and School Committee. Municipal Corporations,* Change in form of charter.

When a city makes a change from one plan of charter described in G. L. c. 43, to another of the plans there described, the general provisions, contained in §§ 1-45, inclusive, of the chapter, continue in force.

Under G. L. c. 43, § 11, when a change is made by a city from one plan to another of the plans stated in that chapter, only those officers required by the newly adopted plan so far as different from those required under the discarded plan shall be elected.

When a city, six years after it has adopted a charter, under the provisions of G. L. c. 43, Plan D, makes a change to Plan B, § 31 of the chapter does not require the election of an entire new school committee, but requires the election of such members only as are necessary to fill terms expiring on the first Monday of the January following the change in charter.

PETITION, filed by four inhabitants, taxpayers and qualified voters of Waltham against the city council and the city clerk for a writ of mandamus commanding the city council to direct the city clerk to prepare official ballots for the municipal election to be held on December 19, 1922, for the offices of two members of the school committee to serve terms of three years; commanding the city clerk to prepare such official ballots; commanding the city council not to direct the city clerk to prepare official ballots for that election for the offices of six members of the school committee as follows: two members to serve one year, two members to serve for two years and two members to serve for three years; and commanding the city clerk not to prepare such official ballots.

Material allegations of the petition, which were admitted by the answer, are described in the opinion.

The case came on to be heard by *Braley,* J., upon the petition and answer, and at the request of the parties was reported by him to the full court for determination.

*G. P. Davis,* (*M. F. Hall* with him,) for the petitioners.

*J. J. Flynn,* for the respondents.

RUGG, C.J.    The question to be decided is whether when a city, which has adopted one plan of charter under G. L. c. 43, changes to another plan under the same chapter, all members of the school committee go out of office and an entirely new board must be elected. The passage of St. 1915, c. 267, of which G. L. c. 43 is the present form, was an innovation in city charter legislation. It could be made applicable under the Constitution only to municipalities already established and existing as cities under art. 2 of the Amendments to the Constitution. It provided four different forms as models of city charter. These are described in G. L. c. 43, § 1, in these words:

"'Plan A,' a city government and legislative body composed of the mayor and the city council, the councillors being elected at large.

"'Plan B,' a city government and legislative body composed of a mayor and city council, the councillors being elected partly at large and partly from districts or wards of the city.

"'Plan C,' a city government and legislative body composed of a mayor and commissioners as hereinafter specified.

"'Plan D,' a city government and legislative body composed of a mayor and four councillors, and an administrative officer, called the city manager, whose powers and duties are defined in sections eighty-nine to ninety-two, inclusive."

Certain general provisions are common to all the forms. It is enacted by § 45 of G. L. c. 43 that sections one to forty-four, both inclusive, shall upon the adoption of any of the plans apply to such plan except as is otherwise provided in such plan. The arrangement of the chapter is graphic. The first forty-five sections are under the topical heading "General Provisions." Then follow these headings:

"Plan A. — Government by mayor and city council elected at large," which includes sections forty-six to fifty-five, inclusive.

"Plan B.— Government by mayor and council elected by districts and at large," which includes sections fifty-six to sixty-three, inclusive.

"Plan C. — Commission form of government," which in-
cludes sections sixty-four to seventy-eight, inclusive.

"Plan D. — Mayor, city council and city manager,"
which includes sections seventy-nine to ninety-two, inclu-
sive.

This vivid and pointed arrangement of the parts of the chapter
has an indication that when a change from one plan to another
is made by any city, the general provisions continue in force
unaffected by the adoption of a different one of the four special
models from the one hitherto accepted. This indication is ac-
centuated by the provision repeated in each plan to the effect
that upon its adoption the plan "shall become operative as pro-
vided in sections one to forty-five, inclusive." Thus each separate
plan is explicitly linked to the general provisions. The distin-
guishing features of the four several plans relate to the mayor
and council or commissioners or city manager and not to the
school committee.

An examination of the chapter in detail shows that it does
not require a clean sweep of all city officers when one plan is
adopted in place of another. In § 11 are the words that the
"officers provided for under the plan so adopted shall be elected
. . . and their terms of office shall begin at ten o'clock in the fore-
noon of the first Monday of January following their election."
These words mean that when for the first time a city resorts to
that chapter for its charter and adopts one of these plans, all
city officers required by the chapter must be elected; and that
when change is made from one plan of the chapter to another
plan of the chapter, only those officers required by the newly
adopted plan so far as different from those required under the
discarded plan shall be elected. There is nothing in § 15 at
variance with this view.

The general provisions, §§ 1 to 45, contain all that is said
in c. 43 concerning the school committee. The election of the
school committee is set forth in § 31. It there is said: "At the
first annual city election held in any city after its adoption of one
of the plans provided in this chapter . . ." This applies, we think,
to the first annual city election after a city comes under the
operation of the chapter by adopting any one of the plans. It
does not mean that, when in a city already subject to the chapter

a change from one plan to another is made, there must be a new election of the school committee.

Every practical consideration supports this conclusion. The school committee under all the plans consists of the same number elected in the same way. Continuity of sound policy is highly desirable in the administration of schools. The history of legislation concerning the election of the school committee shows persistent effort to remove that board from partisan politics. *Leonard* v. *School Committee of Springfield,* 241 Mass. 325. Powers are conferred upon the school committee by §§ 33 and 34 of c. 43 in addition of those of G. L. c. 71, relating to the general powers of school committees. Every reason exists for a continuous board executing a policy changeable by the slower processes available by the opportunity of electing one third only of the members each year.

There is nothing in *Cunningham* v. *Mayor of Cambridge,* 222 Mass. 574, and *Mayor of Cambridge* v. *Cambridge,* 228 Mass. 249, in conflict with this conclusion. Those decisions and the words there used were directed to the first vote of a city coming under the provisions of G. L. c. 43 and its predecessor. See *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 545.

The city of Waltham adopted Plan D in 1917 and changed to Plan B in 1922. It follows that all members of the school committee do not go out of office, but only the two whose terms expire in January, 1923.

The result is that a writ may issue directing the respondents to make the preparations required by law for the election of two members only of the school committee at the city election to be held on December 19, 1922. *Police Commissioner of Boston* v. *Boston,* 239 Mass. 401, 409.

*So ordered.*