FRANK A. SULLIVAN & others *vs.* FREDERICK W. LAWSON & others.

Bristol.    April 9, 1929. — May 31, 1929.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Fall River. Police. Municipal Corporations,* Charter.    *Statute,* Construction.

*Whether* a petition for a writ of mandamus against the members of the board of police of Fall River appointed by the Governor under St. 1894, c. 351, was the proper remedy to be resorted to by persons averring that they were entitled to the offices of members of the board of police by reason of an appointment by the city manager pursuant to an ordinance passed by virtue of authority claimed to have been conferred by G. L. c. 43, §§ 1–45, 79–92, *was not considered* by this court upon an appeal from a dismissal of such a petition, dismissal being deemed proper upon a consideration of the merits of the case.

The power to grant a charter as a city rests wholly in the Legislature under our constitution: the Legislature may grant such powers as it sees fit and may take away or modify powers once granted when in its opinion the public welfare so requires.

The adoption by the city of Fall River of the Plan D form of government under G. L. c. 43, did not confer upon the city power to act in matters not within the scope of the existing municipal authority; and therefore did not give that city power to deal with the appointment, organization and control of its police; that power remained in the Governor, where it was placed by St. 1894, c. 351.   Distinguishing *Cunningham* v. *Mayor of Cambridge,* 222 Mass. 574.

PETITION, filed in the Supreme Judicial Court for the county of Bristol on March 5, 1929, and described in the opinion.

The petition was heard by *Sanderson*, J., who ordered it dismissed. The petitioners alleged exceptions.

*J. L. Hurley*, for the petitioners.

*A. E. Seagrave*, (*T. J. Feeney* with him,) for the respondents.

WAIT, J.   The respondents are the members of the board of police of Fall River appointed, at various times, by the Governor of the Commonwealth pursuant to St. 1894, c. 351.   The petitioners are members of a board of police of Fall River, appointed February 27, 1929, by the city manager, pursuant to an ordinance passed by the city council on February 5, 1929, by virtue of authority claimed to have been conferred by G. L. c. 43, §§ 1-45, 79-92 (the Plan D provisions of St. 1915, c. 267, as amended).   The petitioners bring this petition for a writ of mandamus praying that the respondents be required to recognize the petitioners as members of the board of police of the city of Fall River; and be commanded to surrender and yield up to the petitioners the records, properties, duties and powers of the board of police of the city of Fall River; to vacate the premises occupied by them as members of that board and to deliver them over to the petitioners; to refrain from intruding themselves into the offices usurped by them and from exercising the functions appertaining to said board of police.   The answer, in the nature of a demurrer, raises the question of the propriety of the remedy; and in the nature of answer on the facts, admits all that the petition alleges except the authority of the board created under the ordinance.   The case is before us upon exceptions to an order overruling the demurrer, denying requests for rulings in accord with the claims of the petition, and directing, as matter of law, an entry of dismissal.

We do not consider whether under the peculiar law of this Commonwealth the petition for mandamus can be maintained in the circumstances here involved, see *Sevigny* v. *Russell*, 260 Mass. 294, and cases there cited.   Inasmuch as the result reached must be the same in any event, we consider only the merits of the case. *Browne* v. *Turner*, 176 Mass. 9, 12.   *Commonwealth* v. *McNary*, 246 Mass. 46, 48. *Commissioner of Banks* v. *Tremont Trust Co., ante,* 331.

The power to grant a charter as a city rests wholly in the

Legislature under our constitution. Art. 2, Amendments to the Constitution, *Larcom* v. *Olin*, 160 Mass. 102. The Legislature may grant such powers as it sees fit and may take away or modify powers once granted when in its opinion the public welfare so requires. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 386. *Weymouth & Braintree Fire District* v. *County Commissioners*, 108 Mass. 142.

Fall River was granted a charter as a city in 1854. Among the powers then granted, was the management of its police. By St. 1894, c. 351, the Governor of the Commonwealth with the advice and consent of the Council was required to appoint a board of police for the city which should have authority "To appoint, establish and organize the police of said city and to make all needful rules and regulations for its efficiency." All powers of appointment, organization and control of the police of the city then vested in the mayor and aldermen were conferred upon and vested in the board. In 1902, by c. 393 of the acts of that year, the Legislature revised the charter of Fall River. The police department was classed as one of the "executive departments" of the city by § 23, but was to be under the charge of the board of police appointed under the authority of St. 1894, c. 351, and amendments thereof, "the provisions of which are hereby continued in force."

In 1915 the Legislature enacted a statute "to simplify the revision of city charters," (St. 1915, c. 267, now G. L. c. 43) which granted to cities, other than Boston, the right to amend their existing charters by adopting the provisions of that act applicable to that form which the city chose of four forms of city government set out in the act. In 1928, Fall River, acting under authority thus given, amended its charter by adopting a "Plan D" charter, and in 1929, proceeded to pass the ordinance and the city manager to make the appointments upon which the petitioners relied.

St. 1915, c. 267, inaugurated a new policy of the Legislature in dealing with amendments to existing city charters. *Young* v. *City Council of Waltham*, 243 Mass. 288, 290. It enabled changes to be made in the existing charter powers within the limits laid down in the statute. It did not,

however, confer power to act in matters not within the scope
of the existing municipal authority. Fall River had no
power to deal with the appointment, organization and control
of its police. That power was vested in a body especially
created and empowered to perform the duty not as a matter
of city, but of State, administration under the control of the
Governor. The board thus created was a State board. *Sims
v. Police Commissioner of Boston,* 193 Mass. 547, 549. *Com-
monwealth v. Plaisted, supra. Phillips v. Boston,* 150 Mass.
491, 494. *Newport Police Commission,* 22 R. I. 654. Fall
River could not acquire the power except by grant from the
State. It is not reasonable to assume that such power would
be conferred on Fall River without specific words of grant.
The only language of c. 43, which it is contended confers the
power, is the provision in § 11, that when a city adopts one
of the forms of government under the chapter, "this chapter,
so far as applicable to the form of government under the plan
adopted by the city, shall supersede the provisions of its
charter and the general and special laws relating thereto and
inconsistent herewith." These words, it is contended, are
sufficient when taken with the other provisions of the chapter
which declares that a city voting to amend its charter in the
method directed in the chapter "shall thereafter be governed
by the provisions thereof," and that its inhabitants "shall
have, exercise and enjoy all the rights, immunities, powers
and privileges, and be subject to all the duties, liabilities and
obligations, provided for in this chapter, or otherwise per-
taining to or incumbent upon said city as a municipal cor-
poration." It is to be noted that the grant contained in the
words last quoted is confined to those matters "provided for
in this chapter, or otherwise pertaining to or incumbent upon
said city as a municipal corporation." We do not think that
they can be construed as words of grant of new powers to a
specific city. The right and power to control its police did
not pertain to and were not incumbent upon Fall River.

The decision in *Cunningham v. Mayor of Cambridge,* 222
Mass. 574, relates to a city which possessed the power to
control its police, subject to the provisions of a special
statute. St. 1912, c. 611. It held that by virtue of G. L.

c. 43, Cambridge could exercise the general power conferred by that chapter to legislate in regard thereto, and that St. 1912, c. 611 was superseded. That is far from deciding that if Cambridge had had no such general power of control and the power had been vested in State officials by the statute 1912, the same result would follow. We affirm the decision there made and the statement that the amended charter resulting from the city's action in adopting a Plan B charter is a new charter with the powers in the city government set forth in the applicable provisions of c. 43. That decision affords no basis for the contention that G. L. c. 43, grants to a city amending its charter under the chapter, powers which have been taken from it by a special statute transferring them elsewhere, and repeals by implication or by § 11 (taken by itself or with other words of c. 43), the statute so taking away and transferring them.

Nothing in the cases which have followed or cited *Cunningham* v. *Mayor of Cambridge*, is inconsistent with this decision. See *Mayor of Cambridge* v. *Cambridge*, 228 Mass. 249. *Young* v. *City Council of Waltham, supra. Safford* v. *Lowell*, 255 Mass. 220, 224.

It follows that the order made was correct and entry must be made

*Exceptions overruled.*