WALTER L. ALLEN *vs.* CITY OF CAMBRIDGE
ROBERT F. ALDEMAN *vs.* SAME
(and companion cases[1]).

Middlesex.    February 9, 1944. — June 2, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Cambridge. Municipal Corporations,* Officers and agents, By-laws and ordinances, Municipal finance.

Ordinances of the city council of Cambridge enacted in December, 1941, purporting to increase the annual pay of members of the police and fire departments to "take effect January 5, 1942," were invalid because such increases were prohibited by paragraph (H) of § 1 of St. 1941, c. 505.

Ordinances of the city council of Cambridge purporting to increase salaries of members of the police and fire departments, enacted on the same day the annual budget was submitted by the city manager under G. L. (Ter. Ed.) c. 44, § 32, as amended, but after its submission, were invalid under § 33A.

---

[1] Consolidated and heard with the Allen case were two hundred nine actions, each brought by a fireman in like circumstances with the plaintiff Allen. With the Aldeman case were consolidated and heard two hundred twenty-three actions, each brought by a police officer similarly circumstanced with Aldeman.

FOUR HUNDRED THIRTY-FOUR ACTIONS OF CONTRACT. Writs in the Third District Court of Eastern Middlesex dated March 31, 1942.

The cases were heard by *Frost*, J.

*G. A. McLaughlin*, (*W. H. McLaughlin* with him,) for the plaintiffs.

*J. A. Daly*, City Solicitor, for the defendant.

LUMMUS, J. These cases bring here questions of law arising in a large number of actions of contract brought by members of the police and fire departments of Cambridge, who, having been paid for the first three months of 1942 at the salary rate in force in 1941, claim for that period the increase in their salaries voted by ordinances that the city council purported to enact in December, 1941, and February, 1942. The increase amounts to $200 a year for each man. The defendant city contends that the purported increase was invalid. A judge of a District Court found for the defendant, and reported the cases to the Appellate Division, which dismissed the report. The plaintiffs appealed. The facts appear in the report.

During 1941, and for many years before, the city of Cambridge was governed under a Plan B charter,[1] the provisions of which are found in G. L. (Ter. Ed.) c. 43, §§ 56–63, as amended. *Mayor of Cambridge* v. *Cambridge*, 228 Mass. 249. *Duggan* v. *Third District Court of Eastern Middlesex*, 298 Mass. 274, 279. *Moore* v. *Election Commissioners of Cambridge*, 309 Mass. 303, 304, 306. *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 486. Under a Plan B charter, the mayor holds office "for the term of two years from the first Monday in January following his election and until his successor is qualified." G. L. (Ter. Ed.) c. 43, § 58. Legislative powers are vested in a city council of fifteen members, of whom one is chosen president annually. Council members serve for "two years, from the first Monday in January following their election and until their successors are qualified." § 59. The term of office of the mayor and members

---

[1] That and other plans of charters which cities were authorized to adopt originated in St. 1915, c. 267, "An Act to simplify the revision of city charters," approved May 20, 1915.

of the city council holding office in 1941 normally would end upon the qualification of their successors at ten o'clock in the forenoon on the first Monday of January, 1942, which was January 5, 1942. G. L. (Ter. Ed.) c. 43, § 17, as amended by St. 1938, c. 378, § 6.

Under a Plan B charter, the mayor has a veto power over "every order, ordinance, resolution and vote relative to the affairs of the city, adopted or passed by the city council." But "every such order, ordinance, resolution and vote shall be in force if not returned by the mayor within ten days after it has been presented to him." G. L. (Ter. Ed.) c. 43, §§ 55, 63. By St. 1935, c. 214, § 1, "Salaries of the members of the police and fire departments of the city of Cambridge shall be fixed by ordinance of said city, the provisions of any special or general law to the contrary notwithstanding."

By St. 1938, c. 378, and St. 1941, c. 722, §§ 5–7, provision was made for the adoption by a city of a new and radically different form of charter called a Plan E charter. Under that plan the city government was to consist of (a) a city council of seven or nine members, one of whom was to be chosen mayor, and (b) a "chief administrative officer," called the "city manager." These provisions are now found in §§ 93–116, added to G. L. (Ter. Ed.) c. 43, by § 15 of St. 1938, c. 378, as amended. Under this plan, the mayor has no veto power. The city manager is chosen by the city council to be the "chief administrative officer of the city." § 103, inserted by St. 1938, c. 378, § 15. He has the statutory powers formerly possessed by the mayor with respect to budgets. § 104, inserted by St. 1938, c. 378, § 15. Upon the adoption of Plan E, the new officers were to qualify at the same time as under Plan B, namely, at ten o'clock in the forenoon on the first Monday of January. G. L. (Ter. Ed.) c. 43, § 17, as amended by St. 1938, c. 378, § 6; § 97, inserted by St. 1938, c. 378, § 15. Upon the adoption of a new plan of charter, existing ordinances remain in force. G. L. (Ter. Ed.) c. 43, § 4. *Mayor of Cambridge* v. *Cambridge,* 228 Mass. 249.

Although the record before us is not altogether clear, it sufficiently appears that Cambridge had adopted a Plan E

charter, and that officers chosen under that plan were to take office, and actually took office, on January 5, 1942, and that on that day the Plan B charter expired. If we were to go outside the record, that view would find confirmation in *Moore* v. *Election Commissioners of Cambridge*, 309 Mass. 303, decided June 23, 1941.

The situation in Cambridge in the summer of 1941 was further complicated by another fact. On July 23, 1941, when St. 1941, c. 505, was enacted, as appears from that statute, the then mayor, whose term of office was to end on January 5, 1942, was being prosecuted for crime. Again, if we were to go outside the record, the facts would appear from *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, and *Commonwealth* v. *Mannos*, 311 Mass. 94. By that statute the rights, powers and duties of the mayor were transferred to the president of the city council "during the period . . . ending on the first Monday in January," 1942, which was January 5, 1942. Those rights, powers and duties were to revest in the mayor only in the event that before that day he should be acquitted. Since the record shows that the president acted as mayor on December 24, 1941, it is inferable that the mayor was not acquitted before that date, if at all.

The plaintiffs claim under two sets of ordinances, the first enacted in December, 1941, and the second in February, 1942.

*The first set.* On December 9, 1941, the annual pay of members of the police department was increased by ordinance by $200 for each man, and the president of the city council let ten days go by without a veto. On December 23, 1941, the annual pay of members of the fire department was increased by ordinance by $200 for each man, and the president of the city council approved the ordinance on December 24, 1941. In each instance the ordinance provided that it should "take effect January 5, 1942."

The city council acting in 1941 under the Plan B charter retained their legislative powers as long as they held office, unless those powers were restricted by St. 1941, c. 505. We assume that they had power, unless so restricted, to enact an ordinance to take effect after their terms of office had expired. *Rock* v. *Pittsfield, ante*, 348.

The defendant city contends that the powers of the city council were restricted by St. 1941, c. 505, enacted July 23, 1941. At that time, the mayor was being prosecuted for crime, his term of office and that of the city council were soon to end, and a radical change in the charter was soon to take effect. For the intervening period provision was made that would obviate a special election for mayor. The plaintiffs contend that the limitations imposed by the statute were solely upon the powers of the president as substitute for the mayor, and not upon the powers of the city council. The verbal form and arrangement of the statute lend plausibility to that contention. But looking at the statute and its purpose more broadly we think that contention unsound.

Paragraph (G) of § 1 of the statute, restricting appointments, seems not to be confined to appointments that were to be made by the mayor. The title of the statute, referring not only to the office of mayor, but also to "the administration of the affairs of said city," indicates that the purpose was not as narrow as the plaintiffs contend. *Wheelwright* v. *Tax Commissioner,* 235 Mass. 584, 586. *Opinion of the Justices,* 309 Mass. 631, 638, et seq. Section 3 of the statute created what was clearly a limitation upon the power of the city government as a whole in providing that "during the period covered by this act, no loan shall be made by said city" — meaning that the city should borrow no money — with a single exception, without the approval of the emergency finance board. Coming to the material paragraph (H) of § 1, the statute provided that "during the period covered by this act . . . no . . . increase in salary except regular step-rate increases, shall be made in any appointive office, position or employment in the service of said city."

If, as the plaintiffs contend, that paragraph restricted only the president as substitute mayor, it would have been hardly worth enacting. Many salaries are fixed by heads of departments. G. L. (Ter. Ed.) c. 41, § 108. Any increase in salary could be made by the city council, and the president as substitute mayor could let it take effect by mere inaction. An intention to pass a barren and ineffective statute is not to be imputed to the Legislature. *Flood* v.

*Hodges*, 231 Mass. 252, 257. *MacInnis* v. *Morrissey*, 298 Mass. 505, 509. *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388, 393. We think that one purpose of the statute was to prevent a dying city government, acting under a charter that the voters were discarding in favor of one that was new and radically different, from saddling the incoming administration with embarrassing burdens.

It is urged that the increase, by the terms of the ordinances, took effect at the first moment of January 5, 1942, and that the period to which St. 1941, c. 505, applied did not end until the later hour on that day when the new city officials qualified and took office, if indeed it ended until the close of that day. But we do not think the time of taking effect of the ordinances furnishes the decisive test of their validity. Whenever the increase was to take effect, the increase was "made" by ordinances enacted within the period during which any such increase of salary was forbidden by the statute. Consequently the first set of ordinances, enacted in December, 1941, was ineffective to increase the salaries of the plaintiffs.

*The second set.* On February 16, 1942, the new city council, by a vote of six members against three, enacted two ordinances, one applicable to members of the police department and the other applicable to members of the fire department, increasing the annual salary of each man by the sum of $200. At the meeting held on the afternoon of February 16, 1942, and before the foregoing ordinances were enacted, the annual budget was submitted by the city manager to the city council as required by G. L. (Ter. Ed.) c. 44, § 32, as amended. If material, it is agreed that when the city manager submitted the budget he knew that the ordinances were on the calendar of the city council for action on the same day. But we think that immaterial. It is unnecessary to consider whether the budget was lawfully submitted to the city council in the forenoon of that day when delivered by the city manager to the city clerk, for it actually reached the city council and was read to them before the ordinances were enacted. The actual order of events cannot be changed. We have no occasion to con-

sider whether the ordinances would have been valid had they been enacted before the budget was received by the city council. See *McHenry* v. *Lawrence,* 295 Mass. 119.

"The budget shall include sums sufficient to pay the salaries of officials fixed by law or by ordinance, but no new position shall be created or increase in rate made during the financial year subsequent to the submission of the annual budget, unless provision therefor is made by means of a supplemental budget." G. L. (Ter. Ed.) c. 44, § 33A. *Barnard* v. *Lynn,* 295 Mass. 144, 147. See now the amendment to that section made by St. 1943, c. 62. The city council was without power to "increase any amount in or the total of the annual budget." G. L. (Ter. Ed.) c. 44, § 32, as amended. *Whalen* v. *City Forester of Waltham,* 279 Mass. 287, 291. The plaintiffs do not contend that the budget contained any recommendation covering the increase of salary claimed. The situation falls precisely within the prohibition of the statute, and therefore the second set of ordinances is void. *Flood* v. *Hodges,* 231 Mass. 252. *Shannon* v. *Cambridge,* 231 Mass. 322. *Burt* v. *Municipal Council of Taunton,* 275 Mass. 535. *Remington Typewriter Co.* v. *Revere,* 285 Mass. 1. *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513. *McCarthy* v. *Malden,* 303 Mass. 563. See also *McHenry* v. *Lawrence,* 295 Mass. 119.

Since no separation of law from fact seems to have been involved in arriving at the proper legal conclusion upon the apparently undisputed facts, it is hard to see the utility of most of the numerous so called "requests for rulings" — really detailed arguments — presented by the parties and dealt with by the judge. What has already been said is decisive of the case. But we have examined the so called requests and the action upon them, and find nothing in them requiring further discussion. In each case the entry will be

<div align="center">

*Order dismissing report affirmed.*