SELECTMEN OF TOPSFIELD & others *vs.* STATE RACING COMMISSION & another.

Suffolk.    April 4, 1949. — May 2, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Racing.   License.   Constitutional Law,* Due process of law, Equal protection of laws.   *Words,* "Next annual election."

The requirement in St. 1948, c. 437, amending G. L. (Ter. Ed.) c. 128A, § 13A, of ratification by a majority of the registered voters of towns of approvals by the selectmen of locations for racing meetings was applicable to an approval of a certain location voted by the selectmen of a town in January, 1947, where no racing meetings, except in connection with county fairs, were held at such location previous to May 1, 1948; and in the absence of a ratification of the approval of such location at the annual election in that town in March, 1949, the next annual election therein after the enactment of the statute, action by the State racing commission was precluded upon an application, filed with the commission in January, 1949, for a license to hold racing meetings at such location.

An applicant to the State racing commission for a license to hold racing meetings at a certain location in a town did not have, through approval of that location by the selectmen in January, 1947, any vested rights of which he was deprived without due process of law by applying to such approval the provision of St. 1948, c. 437, requiring ratification of approvals of locations in towns by a majority of their registered voters which precluded action by the commission on his application for want of ratification of such approval.

The circumstance, that approvals of locations where racing meetings were held previous to May 1, 1948, are excepted from the requirement of St. 1948, c. 437, that approvals of locations in towns by the selectmen be ratified by a majority of the registered voters thereof in order to be effective, did not deny equal protection of the law to one whose application to the State racing commission for a license to hold racing meetings at an approved location in a town at which no meetings had been held previous to May 1, 1948, could not be acted on by the commission for want of the required ratification of the approval.

PETITION for a writ of mandamus, filed in the Superior Court on January 25, 1949.

The case was heard by *Good*, J.

*C. C. Worth*, for the intervener.

*J. J. Sullivan*, (*S. L. Raymond* with him,) for the petitioners.

RONAN, J. This petition for a writ of mandamus is brought by the selectmen of Topsfield and five other inhabitants of the town against the members of the State racing commission to restrain the commission from taking action upon an application of the North Shore Corporation for a license to hold harness horse racing meetings at the Topsfield Fair Grounds in said Topsfield. The North Shore Corporation was allowed to intervene as a party respondent. The demurrer of this respondent was overruled and, there being no dispute as to the facts, the judge ordered the writ to issue, restraining the commission from taking any action on the application. The North Shore Corporation, hereinafter called the respondent, appealed from the order overruling the demurrer and the order that the writ should issue.

The owner of a parcel of land known as the Topsfield Fair Grounds, which includes an area known as the track grounds, has leased this area to the respondent. The selectmen on January 25, 1947, approved the location for harness horse racing meetings. At a special town meeting held February 11, 1947, the voters of the town expressed their opposition to horse racing at this location except for the period of the county fair which was annually held on the fair grounds. The board of selectmen on March 7 and

10, 1947, voted to rescind the previous vote of January 25, 1947, approving the location. The vote to rescind was held invalid. *North Shore Corp.* v. *Selectmen of. Topsfield,* 322 Mass. 413. An application filed on March 31, 1948, by the respondent for a license to conduct harness horse racing meetings was denied by the commission on May 14, 1948. Statute 1948, c. 437, was approved on May 28, 1948. Annual elections were held in Topsfield on March 4, 1947, March 2, 1948, and March 1, 1949. The respondent on January 14, 1949, filed another application for a license with the commission, which intended to hold a public hearing upon said application on January 28, 1949, but before this date the petition in the present case was filed. The approval of January 25, 1947, has never been ratified or confirmed by the voters of the town at any annual election; such approval could not be ratified at the annual election in March, 1948, in accordance with St. 1948, c. 437, as the statute was passed nearly three months after the said annual election. No license has ever been granted and no race meetings, other than at the county fairs, have ever been held, with the pari-mutuel system of betting, at the said location. The voters of Essex County pursuant to G. L. (Ter. Ed.) c. 128A, § 14, as amended, voted at the last biennial election in favor of permitting the pari-mutuel system of betting on licensed horse racing within the county.

General Laws (Ter. Ed.) c. 128A was inserted by St. 1934, c. 374, § 3, and § 13A was added by St. 1935, c. 454, § 8, and amended by St. 1948, c. 437, which added to the said section, in so far as now material, the following words: "Provided, nevertheless, that in the case of towns said approval by the selectmen, excepting only the approval of locations where racing meetings have already been held, other than in connection with state and county fairs, prior to May first, nineteen hundred and forty-eight, shall not become effective unless and until it shall be ratified and confirmed by vote, taken by Australian ballot, of a majority of the registered voters of said town voting at the next annual election."

The only question presented is whether St. 1948, c. 437, is applicable to the respondent's application for a license now pending before the commission; if it is, the commission is without authority to pass upon the application; if it is not, the commission may entertain the application and grant or deny it in accordance with § 3 of said c. 128A as amended by St. 1946, c. 575, §§ 2, 4.

The principal contentions of the respondent are that St. 1948, c. 437, cannot refer to past approvals of locations by selectmen which were granted in 1947, as in the instant case, or to those granted in the early part of 1948, since the annual election next after such an approval had taken place long before the enactment of the statute, that the statute should be construed prospectively so as to refer only to approvals granted after the annual election of 1948, and that a construction which would include an approval granted in 1947 or in 1948 before the annual elections would violate certain constitutional rights of the respondent.

The respondent argues that the words "the next annual election" can refer grammatically only to its antecedent "it," which in turn can refer only to "said approval," and that consequently the statute can refer only to such approvals as could be ratified at the first annual election following such approval. It relies upon the general rule of statutory as well as grammatical construction that a modifying clause refers to the last antecedent unless there is something in the subject matter or in the expression of the dominant purpose that requires a different interpretation. *Hopkins* v. *Hopkins*, 287 Mass. 542, 547. *West's Case*, 313 Mass. 146, 149. But this is only a rule of construction to ascertain the legislative intent, and is not to be adopted to thwart such an intent if it clearly appears from an examination of the entire statute. *Lehan* v. *North Main Street Garage, Inc.* 312 Mass. 547, 550. *United States* v. *Rice*, 327 U. S. 742, 753. All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one

group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose. *Commonwealth* v. *Welosky,* 276 Mass. 398, 401, 402. *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 492. *Johnson's Case,* 318 Mass. 741, 746, 747. *Bolster* v. *Commissioner of Corporations & Taxation,* 319 Mass. 81, 84, 85. The Legislature must be assumed to know the preëxisting law and the decisions of this court. *Gar Wood Industries, Inc.* v. *Colonial Homes, Inc.* 305 Mass. 41, 47. *Assessors of Boston* v. *Old South Society in Boston,* 314 Mass. 364. *Meunier's Case,* 319 Mass. 421, 425. As the law stood at the time of the enactment of St. 1948, c. 437, an approval by the selectmen once given was beyond recall. It was so held in *North Shore Corp.* v. *Selectmen of Topsfield,* 322 Mass. 413, which was decided only three months before the said statute was enacted. The dominant purpose of the statute was to give the registered voters in towns the right to say whether the approval of the selectmen should be ratified or rejected. No approvals previously granted were to become effective unless ratified and confirmed by the voters excepting (apart from State and county fairs) only in those instances where racing meetings had been actually held before May 1, 1948, at the approved locations. We cannot adopt the construction of the statute urged by the respondent because that would limit the class of approvals to those granted after the annual election in 1948. The test to determine whether an approval by the selectmen comes within the sweep of the statute is whether racing meetings had been conducted on the approved location prior to May 1, 1948, and not the date when the approval was granted. The statute for the first time conferred the power upon the voters to approve or disapprove at the annual election the action of the selectmen. The power extended to the voters the right to pass upon all such approvals which had previously been granted and which had not resulted in actual racing meetings on the locations approved. It would be inconsistent with the

power granted if the statute should be construed to mean that the power could be exercised only at the annual election next following an approval in 1947 or 1948 when at the time of these elections the voters were without any authority to ratify or reject such an approval. The words "next annual election" could not be construed to apply to any annual election held prior to the enactment of the statute. The next annual election refers to the next annual election at which the voters had the power to express their opinion on all such approvals. To hold otherwise would be to impute to the Legislature an ineffectual attempt to authorize the voters to pass upon all approvals previously granted where race meetings had not been conducted before May 1, 1948, and in the same breath to deny them the exercise of such authority except as to all approvals granted after the annual election on March 2, 1948. Barrenness of accomplishment is not lightly to be imputed to the legislative branch of the government. *Allen* v. *Cambridge*, 316 Mass. 351. *Repucci* v. *Exchange Realty Co.* 321 Mass. 571.

There is nothing in the contention of the respondent that, if the statute applies to the approval of January 25, 1947, it would deprive it of its property without due process of law and would deny it equal protection of the law. The approval of the location at which a license to conduct horse racing meetings has never been granted did not convey any vested rights to the respondent. It did little more, if anything, than merely make the respondent eligible to apply for a license from the commission. A change made in the law pending the application for a permit or a license rather than the law existing at the time of filing is to govern action on the application, and a similar rule has also been applied where the law was changed shortly after the grant of a permit or license, where little has been done under the permit or license, and even where the permit or license related to some comparatively harmless matter like improvements on land. *Boucher* v. *Salem Rebuilding Commission*, 225 Mass. 18, 21. *Spector* v. *Building Inspector of Milton*, 250 Mass. 63, 71. *Brett* v. *Building Commissioner of Brookline*, 250

Mass. 73, 80. Statute 1948, c. 437, did not take away or impair any vested rights of the respondent. Here the respondent never even had a license. *Calder* v. *Kurby*, 5 Gray, 597. *Commonwealth* v. *Brennan*, 103 Mass. 70.

Neither did the statute deny the respondent equal protection of the law. A distinction between race tracks already established and in operation and tracks proposed to be operated in the future cannot be said to be arbitrary or irrational. The Legislature might have decided not to disturb existing businesses and wipe out large investments that had been made, or the Legislature might have considered that there were already about as many tracks as there ought to be and, instead of prescribing a definite number of tracks that should be permitted, left the matter in the first instance to the voters of the town to decide whether the action of the selectmen in approving a location for the holding of racing meetings was consistent with the public interest of the town in which the proposed track was to be located. *Decie* v. *Brown*, 167 Mass. 290. *Stanley* v. *Public Utilities Commission*, 295 U. S. 76. *People* v. *Logan*, 284 Ill. 83. *State* v. *Garden State Racing Association*, 136 N. J. L. 173. *Manos* v. *Seattle*, 146 Wash. 210. The grandfather clause, so called, of the Federal motor carrier act, U. S. C. (1946 ed.) Title 49, § 306 (a), is a good example of preferred treatment accorded to an existing business over a newcomer in the field. See *McDonald* v. *Thompson*, 305 U. S. 263; *United States* v. *Maher*, 307 U. S. 148; *United States* v. *Carolina Freight Carriers Corp.* 315 U. S. 475.

Horse racing with the pari-mutuel system of betting, which is what the respondent proposes to conduct at the Topsfield location, is a form of gambling which has been legalized by the Legislature but which because of the nature of the business can be abolished at any time that the Legislature may deem proper for the safeguarding and protection of the public welfare. The respondent has no complaint because, instead of prohibiting racing meetings, the Legislature only went to the extent of subjecting the approval to a condition which the Legislature deemed necessary in

the public interest. *Calder* v. *Kurby*, 5 Gray, 597. *Commonwealth* v. *Brennan*, 103 Mass. 70. *Commonwealth* v. *Parks*, 155 Mass. 531, 532. *Decie* v. *Brown*, 167 Mass. 290. *Commonwealth* v. *Danziger*, 176 Mass. 290. *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95. *Opinion of the Justices*, 261 Mass. 523, 553. *Crowley* v. *Christensen*, 137 U. S. 86. *Stanley* v. *Public Utilities Commission*, 295 U. S. 76.

There was no error in overruling the demurrer, or in the ruling that St. 1948, c. 437, applied to the approval granted by the selectmen on January 25, 1947. Judgment is to be entered ordering the writ of mandamus to issue as prayed for by the petitioners.

*So ordered.*