WILLIAM L. BENOIT *vs.* RONALD FISHER & another.

Berkshire.    September 29, 1960. — November 10, 1960.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & CUTTER, JJ.

*Insurance,* Modification of policy, Agent, Motor vehicle liability insurance. *Agency,* Scope of authority or employment. *Evidence,* Presumptions and burden of proof.

In a suit in equity to reach and apply the obligation of the insurer under a motor vehicle liability insurance policy in satisfaction of a judgment for property damage obtained by the plaintiff against the insured, the insurer had the burden of proving the affirmative defence alleged by it that there had been a modification of the policy eliminating the property damage coverage before the accident giving rise to the judgment. [389]

A finding that an agent through whom a motor vehicle liability insurance policy had been obtained had authority to modify the policy by elimi-

nating some of its coverage merely by an agreement made between him and the insured was not warranted where the only evidence as to his authority was his testimony that he was "not sure" that he could modify a policy. [389]

BILL IN EQUITY, filed in the Superior Court on March 2, 1959.

The suit was heard by *O'Brien, J.*

*William I. Sabin,* for the plaintiff.

*Charles M. Healey, III,* for the defendant General Accident Fire and Life Assurance Corporation.

SPALDING, J.  On May 6, 1958 (in North Adams), an automobile owned and operated by Ronald Fisher collided with an automobile owned by William Benoit.  Thereafter, in an action of tort for property damage brought against Fisher, Benoit recovered a judgment in the amount of $1,008.50.

This suit is brought by Benoit against Fisher and General Accident Fire and Life Assurance Corporation (hereinafter called the insurer) to reach and apply the obligation of the insurer under a motor vehicle liability policy issued by it to Fisher.  See G. L. c. 175, § 113; c. 214, § 3 (10).  A decree was entered dismissing the bill against both defendants, from which the plaintiff appealed.  The evidence is reported and the judge found the material facts.

Facts found by the judge and by us include the following. On January 1, 1958, the insurer issued a motor vehicle liability policy to Fisher.  The protection afforded by the policy was $10,000 and $20,000 for personal injuries, and $5,000 for property damage.  In the latter part of March, 1958, Alton Perry (an agent of the insurer through whom Fisher obtained the policy) told Fisher that the premium had not been paid, and that since he (Perry) would have to settle his accounts with the insurer in April, he would like to have the premium paid.  Fisher told Perry that he was in financial straits, and they then discussed methods of reducing the premium by diminishing the coverage.  They agreed to modify the policy by reducing the personal injury coverage to the compulsory amount ($5,000 and $10,000)

and by eliminating the coverage for property damage. An "Automobile Questionnaire" on a form supplied by Perry was filled in and signed by Fisher. It was dated January 1, 1958. In the blanks relating to the type of coverage desired only the statutory coverage was mentioned. This questionnaire was forwarded by Perry (whose place of business was in Williamstown) to the insurer's regional office in Springfield and it was stamped "Received Springfield . . . March 27, 9:32, 1958."

On May 7, 1958, the day after the accident, Fisher went to Perry's office and told him about it. Perry informed him that he was not covered for property damage. Fisher then, at Perry's request, signed a "property damage form, acknowledging the fact that . . . [the insurer] had removed . . . [the property damage] coverage as of January 1," 1958. This form was referred to by Perry as an "indorsement" and he stated that he "had only had . . . [it] a few days" before Fisher signed it. We infer that this had been sent to Perry by the insurer.

The question for decision is whether the property damage coverage was in effect on May 6, 1958, the date of the accident. If it was, then the insurer's obligation under the policy was fixed and nothing that occurred on May 7 could impair that obligation. G. L. c. 175, § 112.[1] The answer to this question depends on whether there was an effective modification of the policy prior to the accident. If there was such a modification it must have resulted from the agreement entered into between Fisher and Perry in the latter part of March. It is to be noted that we are not here concerned with a cancellation of compulsory coverage. Hence the requirements prescribed by G. L. c. 175, § 113A (2), do not apply. The plaintiff concedes that Fisher and Perry in March, 1958, took the steps outlined above with

[1] Section 112 reads in part, "The liability of any company . . . under any . . . policy insuring against liability for loss . . . on account of damage to property, shall become absolute whenever the loss or damage for which the insured is responsible occurs. . . . No such contract of insurance shall be cancelled or annulled . . . after the said insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."

respect to eliminating the property damage coverage. Indeed, the evidence on this point is virtually undisputed. The plaintiff contends, however, that, although a reduction of coverage had been agreed upon by both Perry and Fisher, this had not become effective when the accident occurred on May 6. His argument in support of this position is substantially this. Perry, from aught appearing in this record, did not have the authority to cancel or modify the policy. All that he could do was to initiate steps to that end, and until there was some affirmative action by the insurer, by way of an indorsement or otherwise, cancelling or modifying the policy, the original policy was in effect. We are of opinion that this contention must be sustained.

The policy, as it read, on the day of the accident provided for property damage coverage. Prima facie, this was the obligation of the insurer. To avoid this obligation the insurer sets up in its answer the defence that the property damage coverage had been eliminated from the policy. This was an affirmative defence as to which the insurer had the burden of proof. See *Hughes* v. *Williams,* 229 Mass. 467, 470. We are of opinion that it failed to sustain that burden. The evidence falls far short of establishing that Perry had the authority to cancel or modify the policy. See *Harrison* v. *City Fire Ins. Co.* 9 Allen, 231, 233. Compare *Sanford* v. *Orient Ins. Co.* 174 Mass. 416, 421–422. There was no evidence as to what sort of an agent Perry was, or of trade usage about authority or about changes in the extent of coverage by brokers or agents prior to the payment of the premium by the insured or by the brokers and agents to the insurer. The only evidence as to Perry's authority came from him and it was as follows. When first asked if he could modify a policy he replied, ''I have the authority to write a letter to the company.'' When this question was put again his reply was, ''I'm not sure of it; I'm not sure.'' Other than this evidence there was nothing to show what Perry's apparent or actual authority was. We assume that if Perry had in fact the authority to bind the insurer the circumstance that the arrangement was

oral would not be fatal. See *Shumway* v. *Home Fire &
Marine Ins. Co.* 301 Mass. 391, 394; *Friend Bros. Inc.* v.
*Seaboard Sur. Co.* 316 Mass. 639, 645. On the foregoing
evidence the insurer failed to establish that there had been
a modification of the policy by a person authorized to act
on its behalf. The finding of the judge, therefore, that
there had been a modification, cannot stand.

Since Perry was not shown to have authority to reduce
the coverage, there is no need to discuss the contention that
condition no. 15 of the policy did not permit changes in cov-
erage by Perry.[1] See *Blair* v. *National Reserve Ins. Co.*
293 Mass. 86, 88–90.

*Decree reversed.*

---

[1] Condition no. 15 of the policy provided: ". . . nor shall the terms of this
policy be waived or changed, except by endorsement issued to form a part of
this policy, signed by its General Attorney."