INSURANCE RATING BOARD & others *vs.* COMMISSIONER OF INSURANCE.

Suffolk. May 8, 1969. — June 6, 1969.

Present: SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Insurance*, Classification of risks and establishment of premium charges, Motor vehicle liability insurance. *Statute*, Construction. *Constitutional Law*, Equal protection of laws. *Words*, "Policies or bonds," "Coverage."

The Commissioner of Insurance was not authorized by St. 1968, c. 643, § 2A, to "freeze" for 1969 the 1967 rates for automobile property damage liability insurance. [188–189]

The provisions of G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3, respecting the additional automobile property damage liability coverage to be offered to an insured "at his option" and at rates to be

---

approved by the Commissioner of Insurance under § 113B apply only to such optional additional coverage when offered and written for the amount specified in § 113C and in the same policies or bonds as the compulsory bodily injury liability coverage, and leave the companies free to write automobile property damage liability insurance independently of such compulsory insurance or in amounts in excess of such specified amount at rates governed by G. L. c. 175A rather than subject to approval by the Commissioner under c. 175, §§ 113C, 113B; so interpreted, § 113C does not deny equal protection of the laws. [189–190]

Approval by the Commissioner of Insurance under G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3, and § 113B, of rates for automobile property damage liability insurance "shown . . . in the . . . Manual" of such rates did not constitute approval of rates shown in subsequent versions of the "Manual." [190–191]

Under G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3, the procedure established by the first paragraph of § 113B was intended to be followed in determining rates for automobile property damage liability coverage referred to in § 113C, and although c. 643 was not enacted in time for full compliance with such procedure respecting rates for the property damage coverage for the "ensuing calendar year," 1969, the Commissioner was afforded inadequate time for hearings and investigations of proposed 1969 rates not filed until December 26, 1968, and he was justified in rejecting them, thus reëstablishing for 1969 the rates then in effect. [191–192] CUTTER, J., concurring in the result.

THREE BILLS IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on December 16, 1968, and December 30, 1968.

The suits were reserved and reported by *Spiegel,* J.

*Herbert P. Wilkins (George M. Hughes* with him) for the Insurance Rating Board & others.

*Allan G. Rodgers,* Special Assistant Attorney General, for the Commissioner of Insurance.

*Nathan S. Paven,* for American Trial Lawyers Association — Massachusetts Chapter, Inc., amicus curiae, submitted a brief.

SPIEGEL, J. These are proceedings brought by the Insurance Rating Board (board), the Mutual Insurance Rating Bureau (bureau) and several insurance companies to determine whether the Commissioner of Insurance (commissioner) had authority to "freeze" certain automobile insurance rates. One is a suit for declaratory relief. The other two proceedings are under G. L. c. 175, § 113B, and

G. L. c. 175A, § 19. The proceedings were reserved and reported by the single justice without decision upon the pleadings and a statement of agreed facts.

The board and the bureau are associations of insurance companies. They are rating organizations licensed under G. L. c. 175A to file rates with the commissioner, on behalf of their members and subscribers, for various kinds of insurance, including automobile property damage liability insurance.[1] They have in the past made "rate filings" for automobile property damage liability insurance.

Statute 1968, c. 643, was approved on July 16, 1968. Section 2A of that act directed the commissioner to "fix and establish the same classifications of risks and the same basic premium charges or lesser charges . . . in connection with the issue or execution of motor vehicle liability policies or bonds, both as defined in . . . [G. L. c. 90, § 34A] as he fixed and established . . . for . . . [1967]." Section 3 of the act amended G. L. c. 175, § 113C, to require insurance companies authorized to issue compulsory bodily injury liability coverage policies or bonds "to issue to any person purchasing such policy or bond, at his option, additional coverage . . . of property damage, so called, to a limit of at least five thousand dollars. The rates for such additional coverage shall be subject to the approval of the commissioner, under the provisions of . . . [§ 113B]."[2]

---

[1] General Laws c. 175A, § 6 (a), inserted by St. 1947, c. 641, provides in pertinent part, "Every insurer shall file with the commissioner or his designated representative every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use. Every such filing shall state the effective date thereof, which shall not be prior to the filing date, and such filing shall indicate the character and extent of the coverage contemplated."

General Laws c. 175A, § 7 (a), so inserted, provides in pertinent part, "If at any time the commissioner finds that a filing does not meet the requirements of this chapter, he shall, after a hearing held upon not less than ten days' written notice . . . issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter, and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective."

[2] General Laws c. 175, § 113B, as amended through St. 1968, c. 643, § 2, provides in pertinent part, "The commissioner shall, annually on or before September fifteenth, after due hearing and investigation, fix and establish fair and reasonable classifications of risks . . . and adequate, just, reasonable and nondiscriminatory premium charges to be used and charged by com-

On October 14, 1968, the effective date of St. 1968, c. 643, the board and the bureau "made . . . rule filing[s] covering the rating of the additional property damage liability coverage described in G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3." The rating rules provided that the rates for such coverage would be the rates shown in the "Massachusetts Automobile Property Damage Manual." These filings were approved by the commissioner and were effective as of October 14, 1968.

On November 25, 1968, the commissioner filed in his office a "Memorandum in Regard to Classifications of Risks and Schedule of Premium Charges for Motor Vehicle Liability Policies or Bonds as Defined in . . . [G. L. c. 90, § 34A] for the Year 1969, and Property Damage Liability . . . Coverage." The commissioner purported to "establish and promulgate" for 1969 the classifications of risks, premium charges and rules and regulations applicable to "motor vehicle liability policies or bonds" as defined in G. L. c. 90, § 34A, which were in effect for 1967. He also purported to "establish, reaffirm and approve" for 1969 the classifications of risks, premium charges and rules and regulations applicable to automobile property damage liability insurance (as defined by G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3) which were in effect for 1967.

On December 26, 1968, the board and the bureau each

panies in connection with the issue or execution of motor vehicle liability policies or bonds, both as defined in . . . [G. L. c. 90, § 34A] for the ensuing calendar year or any part thereof. . . . During said calendar year . . . any such company may make written application to the commissioner for permission to use, in place of the premium charges fixed and established by him as aforesaid, a percentage decrease from said premium charges which shall be uniform for all such classifications throughout the commonwealth. Such deviations shall be allowed only if the commissioner finds that the premium charges the applicant desires to use are adequate, just, reasonable and nondiscriminatory and will not be used by the applicant as a means of attracting only such risks as are regarded as presenting less hazard of loss than other risks in the same classification. Every application for permission to so deviate shall be filed with the commissioner subsequent to and within thirty days of his having filed in his office the memoranda aforesaid . . . . The time so established for the hearing shall not be later than thirty days after receipt by the commissioner of the application. If the commissioner finds that the deviation is justified and the resulting premium charges satisfy the requirements of this section, he shall issue an order permitting the deviation to b used by the applicant for the ensuing calendar year beginning January first."

delivered to the commissioner purported filings regarding automobile property damage liability insurance. Each filed separately under G. L. c. 175A and under G. L. c. 175, § 113C. The commissioner returned the documents, stating that they were "inconsistent with . . . [his] Memorandum and Order of November 25, 1968."

1. The commissioner contends that the rate "freeze" provision of St. 1968, c. 643, § 2A, applies to automobile property damage liability insurance. He argues that the Legislature, when it used the words "policies or bonds" as opposed to "coverage" (compare St. 1968, c. 643, § 2A with St. 1968, c. 643, § 3) intended the words "policies or bonds" to include all coverages contained in policies or bonds which contain the compulsory bodily injury liability coverage, and not just the compulsory bodily injury liability coverage. He assigns a similar meaning to the same words in G. L. c. 175, § 113B, and asserts that under that section, prior to the passage of c. 643, "he had the power theoretically" to fix and establish the rates for all coverages included with the compulsory bodily injury liability coverage in a single policy or bond.

We think that the words must be limited to the compulsory bodily injury liability coverage under G. L. c. 90, § 34A. In *Benoit* v. *Fisher*, 341 Mass. 386, 388, this court stated that the requirements of G. L. c. 175, § 113A (2), did not apply to property damage coverage. Similarly in *Lodge* v. *Bern*, 328 Mass. 42, 43–44, the provision of G. L. c. 175, § 113A, which forbids exceptions or exclusions from the compulsory coverage was said to have "no application to the coverage in excess of the required $5,000." In both cases, this court limited the words "motor vehicle liability policy as defined in . . . [G. L. c. 90, § 34A]" as they appear in § 113A to the compulsory bodily injury liability coverage. See also *Macheras* v. *Syrmopoulos*, 319 Mass. 485, 486–487. The words there are essentially the same words as the Legislature used in St. 1968, c. 643, § 2A, and G. L. c. 175, § 113B, as amended by St. 1968, c. 643, § 2. Where the Legislature uses the same words in several sections which

concern the same subject matter, the words "must be presumed to have been used with the same meaning in each section." *Liddell* v. *Standard Acc. Ins. Co.* 283 Mass. 340, 346. The commissioner was neither required nor authorized by St. 1968, c. 643, § 2A, to "freeze" the automobile property damage liability insurance rates.

2. General Laws c. 175, § 113C, as amended by St. 1968, c. 643, § 3, requires the insurance companies "to issue to any person purchasing . . . [compulsory bodily injury liability coverage], at his option, additional coverage . . . of property damage . . . ." The board and the bureau contend that § 113C does not apply to everyone who purchases the automobile property damage liability coverage. Apparently focusing on the words "at his option," they argue that if the insurance company willingly offers the insured the automobile property damage liability coverage, "no statutory compulsion is needed, no option is exercised, and the rates for such additional coverage are governed by G. L. c. 175A."

We do not agree. The board and the bureau admit that the class of risks to which they argue § 113C applies is quite small and may, in fact, be nonexistent. We think that if their interpretation of the section were adopted, the class would be nonexistent, for then an insurance company would need only to always "voluntarily" offer such coverage to all persons purchasing the compulsory bodily injury liability coverage in order to avoid the rates requiring the commissioner's prior approval under §§ 113B and 113C. An intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature. *Allen* v. *Cambridge,* 316 Mass. 351. *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309. We believe that the words "at his option" signify nothing more than a desire by the Legislature to make clear that, although the insurance companies issuing compulsory bodily injury liability coverage are required to offer certain automobile property damage liability coverage, the insured is not required to purchase it. We conclude that the Legislature intended the provisions of G. L. c. 175,

§ 113C, as amended by St. 1968, c. 643, § 3, to apply to all policies and bonds containing the compulsory bodily injury liability coverage to the extent set out in part 3 of this opinion.

3. The board and the bureau contend that this interpretation of § 113C "is unconstitutional because it makes unreasonable distinctions among insurance companies writing automobile property damage liability insurance." The distinction, however, is not a distinction between insurance companies but a distinction as to insurance policies. Section 113C requires companies issuing policies or bonds containing the compulsory bodily injury liability coverage to offer in the same policies or bonds certain optional coverage. It also requires that the rates for "such additional coverage," the optional automobile property damage liability coverage, included with the compulsory bodily injury liability coverage be approved by the commissioner. It does not prohibit insurance companies which issue policies or bonds containing the compulsory bodily injury liability coverage from offering, independent of the compulsory bodily injury liability coverage, automobile property damage liability insurance. Nor does it make the rates for such independent automobile property damage liability insurance or the rates for automobile property damage liability coverage in excess of the required amount subject to the approval of the commissioner. General Laws c. 175, § 113C, applies only to automobile property damage liability insurance up to and including $5,000 which is offered in conjunction with the compulsory bodily injury liability coverage. The companies issuing policies or bonds that include the compulsory bodily injury liability coverage are free to file under G. L. c. 175A with regard to the excess or independent automobile property damage liability coverage.

4. The board and the bureau also contend that the filings they tendered under G. L. c. 175, § 113C, on December 26, 1968, were "unnecessary." They maintain that because the rate rulings filed on October 14, 1968, adopted for § 113C coverage the rates "shown . . . in the Massachusetts Auto-

mobile Property Damage Manual" (as opposed to the rates shown in the *present* manual), the filings tendered on December 26, 1968, under G. L. c. 175A, by establishing the rates shown in the manual, apply also to § 113C coverage.

In effect, the board and the bureau contend that in approving the rules filed on October 14, 1968, the commissioner "repealed" the provision of § 113C which requires his approval of rates under § 113B and returned the rate setting procedure to c. 175A, where it had been prior to the enactment of St. 1968, c. 643, § 3. We do not think that the commissioner intended such a result. In any event, he lacked the authority to adopt or approve any rule directly contrary to the statute under which he acted.

5. General Laws c. 175, § 113C, as amended by St. 1968, c. 643, § 3, states that the rates "shall be subject to the approval of the commissioner, under the provisions of . . . [§ 113B]."[3] We are of opinion that the Legislature intended the entire procedure established in the first paragraph of § 113B to apply to § 113C. The insurance companies, their associations or both may file with the commissioner suggested rates. The commissioner is to conduct hearings and investigations. Then, on or before September 15, the commissioner is to fix and establish or approve "adequate, just, reasonable and nondiscriminatory" rates. These rates would then be in effect "the ensuing calendar year or any part thereof."

It seems clear that the Legislature intended the commissioner to have adequate time to investigate the rates filed by the insurance companies prior to their effective date. In the instant case the rates were filed on December 26, 1968. The commissioner was afforded less than four working days before the "ensuing calendar year" when the rates were to be effective. We realize, of course, that c. 643 was not enacted in time for the procedure outlined in § 113B to be followed. Nevertheless, the time during which the commissioner could act under § 113B was certainly not adequate. It seems to us that the board and the bureau need not have

---

[3] See footnote 2, *supra.*

waited over five months from the date of the enactment of the legislation and over two months from its effective date before filing their rates. Although the commissioner could have acted subsequent to September 15, 1968 (see *Doherty* v. *Commissioner of Ins.* 328 Mass. 161, 163), we think he was justified in rejecting the filings made under § 113C and thus reëstablished for the ensuing year the rates then in effect with regard to the § 113C coverages.

6. In the suit for declaratory relief, a final decree is to be entered declaring (1) that the provisions of St. 1968, c. 643, § 2A, apply only to the compulsory bodily injury liability coverage under G. L. c. 90, § 34A, and that the commissioner's memorandum of November 25, 1968, in so far as it purports to apply to coverages other than the compulsory bodily injury liability coverage under G. L. c. 90, § 34A, is of no effect; (2) that the board and the bureau were entitled during 1968, and in 1969 and 1970 are entitled to make filings under G. L. c. 175A relative to all automobile property damage liability coverage *not* subject to G. L. c. 175, § 113C; and (3) that the board and the bureau were and are entitled during the same years to make filings subject to G. L. c. 175, § 113C, relative to automobile property damage liability coverage to a limit of at least $5,000 which is offered to the insured as part of a policy or bond which also includes the compulsory bodily injury liability coverage under G. L. c. 90, § 34A.

In the proceedings under G. L. c. 175, § 113B, and G. L. c. 175A, § 19, decrees are to be entered ordering the commissioner to accept the filings tendered by the board and the bureau on December 26, 1968, under G. L. c. 175A, said filings to be effective as of December 31, 1968, applicable to automobile property damage liability coverage in excess of the $5,000 amount required by § 113C and to automobile property damage liability coverage offered independent of the compulsory bodily injury liability coverage, and subject to the provisions of G. L. c. 175A, §§ 6 and 7.[4]

*So ordered.*

---

[4] See footnote 1, *supra.*

CUTTER, J. (concurring) I concur in parts 1 through 4 of the opinion and in the results stated in part 6. My concurrence in the result reached in part 5 of the opinion, is on the following grounds: (a) The Commissioner, by his order of November 25, 1968, purported to establish for 1969 automobile property damage rates for the purposes of, and to the extent set out in, G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3. Although the meaning of the final sentence of § 113C, as amended by § 3 of the 1968 statute, is uncertain in various respects, I interpret the sentence as intended to make all the procedures under § 113B applicable to the determination and review of rates under § 113C, as amended. (b) Section 113B permits review of the Commissioner's orders under that section "within twenty days from the filing of . . . [the] memorandum thereof in his office," by a petition for review filed in the county court. The only proceeding initiated within twenty days after November 25, 1968, was the petition for declaratory relief mentioned in the first paragraph of the opinion (seasonably filed on December 16, 1968, because December 15 was a Sunday; see G. L. c. 4, § 9). Paragraph 22 of that petition reads, "The petitioners seek declaratory relief under G. L. c. 231A and, *insofar as the memorandum of November 25 constitutes an order or other action of the Commissioner which may be appealed to this Court, under G. L. c. 175, s. 113B* or under any other provisions of the General Laws, the petitioners also appeal therefrom" (emphasis supplied). (c) Even if it be assumed that this petition constitutes a proper petition for review under § 113B, the question of review of the Commissioner's action of November 25, 1968, as action establishing automobile property damage rates for 1969, does not appear to have been argued in the brief for the petitioners. Accordingly, I conclude that that type of review is not now sought and has been abandoned. See S. J. C. Rule 1:13 (351 Mass. 738).