*Municipal Court of the
City of Boston*
No. 273318

## GLORIA J. MACQUARRIE
### v.
## VERNON BALCH

Argued: Oct. 15, 1971    Decided: Jan. 17, 1972

*Present:* Adlow, C. J., Lewiton, J., Gorrasi, Spec. J.

Case tried to *Deguglielmo, J.*

**Adlow, C. J.** In this proceeding the petitioner, Gloria MacQuarrie, seeks to procure the discharge of funds from attachment. In an earlier proceeding, Vernon Balch obtained a judgment against her in an action based on a claim for property damage. In a proceeding on this judgment the First National Bank of Boston was named as Trustee and answered that it had funds in the name of Gloria Mac-Quarrie in the amount of $49.93. MacQuarrie is the recipient of Mother's Aid under the provisions of General Laws, Chapter 118. At times she deposited funds remaining in her hands in a checking account in that Bank. Monies other than those received by her as a recipient of Aid were occasionally deposited by her.

In the petition now under review MacQuarrie sought to have the attachment released for the reason that the funds received by her could not be reached by trustee process. The court refused to so rule, and being aggrieved the petitioner brings this report.

There was no error. The attachment of funds by trustee process is authorized by statute. G.L. c. 246, § 1. Certain funds standing in the name of the debtor have been declared exempt from attachment by legislative enactment. G.L. c. 246, § 36. Of the eight distinct situations which are exempted [by the statute], not one

embraces funds on deposit which were originally received by the depositor as welfare payments. While it is true that welfare payments are designed to satisfy the needs of persons dependent on public assistance, once the money is delivered to the welfare recipient, it is unmarked and loses its character as a part of the welfare fund. No trust is fastened on it. While a welfare recipient may commit a morally reprehensible act in dissipating such moneys, we are aware of no law which brands such conduct as illegal.

It is to be regretted that no opinion of our Supreme Judicial Court is available to guide us. The fact, however, that no such precedent exists suggests that the position of the petitioner has never been seriously entertained, despite the numerous occasions over the years when similar funds have been attached.

The presence on our statute books of a variety of statutes exempting certain funds from the operation of the trustee statute (G.L. c. 246, §§ 1, 26) bespeak the industry of our legislators in insulating funds intended for the needy from the grasp of creditors. See:

G.L. c. 115, § 5 — Veteran's Benefits.
G.L. c. 118A, § 6 — Old age Assistance.
G.L. c. 118, § 10 — Mother's Aid.
G.L. c. 175, § 110A — Disability Insurance.
G.L. c. 175, § 135 — Group Life Insurance.
All these statutes were designed to deny cre-

ditors access to these funds **before** they were paid to the beneficiary. They were expected to assure the beneficiary an opportunity to receive the money. The exemption lasted only up to the moment that the funds came into the beneficiary's hands. *Trotter* v. *Tennessee,* 290 US 354. Once these funds reach the beneficiary's hands they lose the character impressed on them while they are awaiting delivery. That the funds under attachment were found by the court to have been received from Welfare sources, is immaterial. *Spicer* v. *Smith,* 288 US 430.

It is not unreasonable to assume that if the Legislature had desired to extend its protection to these funds after they reached the hands of the beneficiary it would have said so in express words. Such procedure was followed by Congress in the case of benefits provided for disabled veterans. 38 U.S.C. § 454a.

We cannot ignore the concern of public authority in protecting the needy by legislation. The interest of our Legislature in workingmen is evidenced by the restrictions on the power of garnishing wages by the provisions of G.L. c. 246, § 32 (8). Having evinced so much concern for the debtor class, is it conceivable that it would have remained silent with respect to funds already in the beneficiary's hands unless it did not consider the matter sufficiently serious to merit its attention? Is it not more reasonable to assume that the Legislature viewed

the banking of funds given to relieve distress as so unlikely and improbable that it paid no attention to it?

In our equalitarian society, money in the hands of a welfare recipient is identical with money in the hands of any other citizen.

There was no error. **Report dismissed.**

**Lewiton, J., dissenting:** Despite the small amount involved in this case, I feel that the question of the proper construction of G.L. c. 118, § 10 is of sufficient importance to warrant expressing my views thereon. I am prompted to do so by reason of the fact that several other statutory programs for the relief of needy persons contain language substantially identical with that of § 10 (see, *e.g.*, G.L. c. 115, § 5; G.L. c. 118A, § 6; G.L. c. 118D, § 13), and because I believe that the construction adopted by the majority here would destroy the protection with which the Legislature sought to shield public funds provided for the support of such persons. We have no way of knowing how many trustee attachments of bank credits representing funds distributed under such programs have been permitted to prevail by reason of the lack of awarness of the provisions of these exemption statutes on the part of aid recipients, and by the inability of such recipients generally to afford to hire legal counsel who might discover and protect their rights thereunder. The lack of reported precedents on this point may well be due to

such uninformed submission by aid recipients, and wholly unrelated to the merits of the interpretation here urged by the petitioner.

The pertinent facts in this case, as found by the trial judge, may be summarized as follows:

The respondent herein (Balch) had obtained a judgment against the petitioner (MacQuarrie), in an earlier action based on property damage caused by the negligence of MacQuarrie. Thereafter, Balch commenced, by trustee process, an action on said judgment and named the First National Bank of Boston (Bank) as trustee. The Bank answered that there was a net credit of $49.93 in an account standing in the name of MacQuarrie and that it held such sum as the subject of attachment. It is these funds which MacQuarrie seeks to have released from attachment in those proceedings. MacQuarrie is a recipient of aid under G.L. c. 118, providing for aid to families with dependent children. Periodically, she converted checks which she received from the Commonwealth under this program into cash, spent some of the cash on immediate necessities, and deposited the remainder in a checking account at the Bank, in which the aforementioned credit balance remained at the time of this attachment. While this account was also used sometimes to receive monies obtained by MacQuarrie from other sources, and to pay other obligations, the trial judge found as a fact that

the "credit at the time of attachment was monies remaining to the plaintiff in cashing her Aid check and paying sundry bills for necessaries."

At the close of the evidence, MacQuarrie requested a ruling, among others, that the funds in the attached bank account in question were free from attachment, as they were "welfare funds". This request was denied as "not applicable to facts found". The trial judge then proceeded to find and rule, as a matter of law, that the bank credit referred to above "was not aid within the meaning of G.L. c. 118, § 10, at the time of the attachment", and he dismissed the petition to dissolve the attachment. In the principal action, the trial court allowed the plaintiff's (Balch's) motion for judgment based on an affidavit of no defense, and a finding was made for the plaintiff. The issue before us is the correctness of the court's ruling that the funds or credit in question were, as a matter of law, not exempt from attachment by trustee process.

The pertinent portion of G.L. c. 118, § 10, reads as follows: "Aid hereunder shall not be subject to trustee process and no assignment thereof shall be valid." The word "aid" as used in chapter 118 is defined in § 1 as "money payments with respect to . . . families with a dependent child or children."

So far as I am able to ascertain, there has been no decision by the Supreme Judicial Court

as to whether the exemption from attachment by trustee process which is provided by G.L. c. 118, § 10, and by other statutes containing identical or similar provisions (see G.L. c. 115, § 5; G.L. c. 118A, § 6; G.L. c. 118D, § 13; G.L. c. 175, § 110A; G.L. c. 175, § 135) extends to bank credits representing the proceeds of public aid or other benefits which the Legislature has sought to protect in this manner. Since the applicability of § 10 to the situation here involved cannot be determined from a literal reading of the statute, "it must be construed, if reasonably possible, so as to effectuate the purpose of its framers." *Commonwealth* v. *S. S. Kresge Co.*, 267 Mass. 145, 148. *Porter* v. *Sorell*, 280 Mass. 457, 461. *Foley* v. *Lawrence,* 336 Mass. 60, 65. *Frye* v. *School Committee of Leicester,* 300 Mass. 537, 538. *Bolster* v. *Commr. of Corps. & Taxation,* 319 Mass. 81, 84-5. *Commr. of Corps. & Taxation* v. *Assessors of Boston,* 324 Mass. 32, 36.

In construing this section, we must be guided also by the accepted canon of statutory interpretation that every word of a legislative enactment is to be given full force and effect so far as reasonably practicable, and that "no clause, sentence or word shall prove superfluous, void or insignificant if by any other construction it may be made useful and pertinent." *Libby* v. *NY, NH & Hartford RR,* 273 Mass. 522, 526. *Insurance Rating Bd.* v. *Commr. of Ins.,* 356 Mass. 184, 189. *Gillam* v. *Board of*

*Health of Saugus,* 327 Mass. 621, 623. *Allen* v. *Cambridge,* 316 Mass. 351, 355.

While the existence of the aid provisions contained in c. 118 of the General Laws goes back many years (see *Cohasset* v. *Scituate,* 309 Mass. 402, 405-6), the provision exempting public aid for families with dependent children from attachment by trustee process was first enacted by St. 1936, c. 413, § 1, as part of a comprehensive revision of existing statutes dealing with such aid. The purpose of this new statute is manifested in its requirements that each city or town, through its board of public welfare should "aid every parent [as defined in the statute] in properly bringing up, in his or her own home, each dependent child . . ." and that the "aid furnished shall be sufficient to enable such parent to bring up such child or children properly in his or her own home and shall be in an amount to be determined in accordance with budgetary standards as approved by the Department of Public Welfare of the Commonwealth. G.L. c. 118, § 2, as enacted in St. 1936, c. 413, § 1. The 1936 revision was enacted with a view to having it mesh with, and procure the benefits of, the then recently enacted Federal Social Security Act, providing for substantial contributions from the federal government, (see Report of the Special Commission Established to Study and Revise the Laws Relating to Public Welfare, House Doc. No. 1551 of 1936, with draft legis-

lation containing section 10 as subsequently enacted in c. 413 of the Acts of 1936.)

The federal statute referred to in the aforementioned report recites a purpose to encourage "the care of dependent children in their own homes or the homes of relatives by enabling each state to furnish financial assistance . . . to needy dependent children and the parents . . . with whom they are living . . ." (42 U.S.C. § 601). That statute also provides that the state agency administering this program may take action to assure that payments made under it will be used "in the best interests of such child" or children. (42 U.S.C. § 605).

It seems apparent to me that a liberal construction of the exemption from trustee attachment will tend to further these basic purposes of the aid program under G.L. c. 118. Moreover, the narrow construction adopted by the majority would not further those purposes, and would render meaningless and inoperative the words of the statute pertaining to the exemption from attachment.

It is well settled that, wholly apart from G.L. c. 118, § 10, no monies, credits or other property are subject to attachment by trustee process unless they are, at the moment the process is served, due absolutely and without any contingency. See G.L. c. 246, § 32. *Singarella* v. *Boston,* 330 Mass. 257; *Abbott Lumber and Building Supply Co.* v. *Cushing Construction Co., Inc.,* 330 Mass. 182.

While aid under chapter 118 was, when § 10 was first enacted, payable by cities and towns (St. 1936, c. 413), which are generally subject to be summoned as trustees in actions commenced by trustee process, (see *Adams* v. *Tyler,* 121 Mass. 380, 381; *Hooker* v. *McLennan,* 236 Mass. 117, 119.), it is at least extremely doubtful that a prospective aid payment could then have been regarded as "due absolutely and without any contingency" *prior to* disbursment by the municipality or that this was the type of obligation of a municipality which would be subject to attachment by trustee process under any circumstances. See *Walker* v. *Cook,* 129 Mass. 577, 579. In any event, since neither the Commonwealth nor any of its departments may be summoned as a trustee under trustee process (*Dewey* v. *Garvey,* 130 Mass. 86, 87; *William J. McCarthy Co.* v. *Rendle,* 222 Mass. 405, 406), it follows that after the enactment of St. 1967, c. 658, by which the Commonwealth assumed direct administration of, and payments under, this program of aid under chapter 118, through its Department of Public Welfare, there could be no attachment by trustee process of prospective aid payments *before* they were paid to eligible recipients, wholly apart from the exemption provisions of § 10. It is significant to note, in this connection, that in enacting St. 1967, c. 658, the Legislature either amended or repealed every section of c. 118 of the General Laws as

then in force, with the exeception of section 10 (here under consideration) and section 9 (dealing with eligibility), both of which sections were left unchanged.

In the light of this legislative history, the narrow construction of § 10 adopted by the majority would appear to impute to the legislature an intent to enact, in the 1936 statute, and to preserve in the 1967 revision of chapter 118, provisions for exemption from attachment wholly lacking any operative effect or legal significance. This is, in my opinion, impermissible, where the section can reasonably be construed in such a manner as to give it force and effect, consistent with the purposes of the statute as a whole.

In considering the applicability of the exemption provision of section 10 to the bank credit involved in this case, it is to be noted that it represents funds received by the petitioner, MacQuarrie, from the Commonwealth as "aid" under G.L. c. 118, and that such funds at all times remained subject to her demand, and readily available for use by her for the intended purpose of support for her dependent children. There is nothing in the record to indicate that the petitioner has any intention of diverting the funds represented by this bank account to any other purpose, or that the deposit of such funds in the checking account was made for any purpose other than to retain the said funds in safety, for use as needed for

such support from time to time. I am not persuaded that the legislature intended to require that in order for the petitioner to have the benefit of the statutory provisions exempting aid funds from trustee attachment, she must keep them on her person or under her own roof. In my opinion, the exemption from attachment remains applicable to these funds, regardless of technicalities of title, so long as they are readily available to the recipient for use as needed for their intended purpose. In construing comparable, though not identical, statutory provisions, other courts have reached similar conclusions. See: *Porter* v. *Aetna Casualty Co.*, 370 US 159, 162. *Lawrence* v. *Shaw,* 300 US 250, 251. (In the *Lawrence* case, the Supreme Court distinguished the case of *Trotter* v. *Tennessee,* 290 US 354, relied on by the majority here.) *Consumer Credit Corp.* v. *Lewis,* 313 NYS 2nd 879. *Guardian Loan Co. of Plainfield* v. *Baylis,* 112 NJ Super 44.

We need not attempt at this time to mark out the precise limits to the applicability of the exemption from trustee attachment provided by G.L. c. 118, § 10. It would be sufficient for purposes of this case to rule, as I would, that this exemption is applicable to bank credits consisting exclusively of the proceeds of aid payments received under chapter 118, and deposited in an account standing in the name of the recipient of such payments and readily available on demand by such person for use

in the support and maintenance of his or her dependent child or children. A person claiming the benefits of such exemption from attachment would, of course, have the burden of establishing the facts upon which the exemption rests. *Cf.* G.L. c. 246, § 33. *Meteor Products Co.* v. *Societe D'Electro, etc.,* 263 Mass. 543, 546. *Farina* v. *Vitti,* 282 Mass. 532, 537. *Georgeopoulos* v. *Georgeopoulos,* 303 Mass. 231, 233.

I would reverse the ruling dismissing the petition to discharge the attachment, and order the attachment discharged.

PAUL W. GOLD

for the Petitioner

LEONARD L. KAUNFER

for the Respondent